Kristine UTLEY, Plaintiff, Appellee,

v.

GOLDMAN SACHS & COMPANY, et al., Defendants, Appellants.

No. 89–1218.

United States Court of Appeals, First Circuit.

Heard July 31, 1989.

Decided Aug. 23, 1989.

Theodore Edelman with whom John F. Cannon, Sullivan & Cromwell, New York City, Douglas F. Seaver, Stewart A. Broder and Gaston & Snow, Boston, Mass., were on brief for defendants, appellants.

Richard D. Glovsky, Boston, Mass., with whom Melinda Milberg, Daniel S. Tarlow and Glovsky & Associates were on brief, for plaintiff, appellee.

Before BOWNES and SELYA, Circuit Judges, and HARRINGTON,* District Judge.

* Of the District of Massachusetts, sitting by designation.

HARRINGTON, District Judge.

Goldman, Sachs & Co., Goldman Sachs Money Market Inc. ("GSMMI"), David Ford and Frank Gaul, defendants-appellants, appeal from the district court's denial of their motion for a stay of all proceedings pending arbitration of plaintiff, Kristine Marie Utley's Title VII claims. The district court (Wolf, J.) denied defendants' motions, based upon the United States Supreme Court decision of *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), which ruled that an individual cannot prospectively waive judicial remedies for a violation of Title VII. Defendants filed an appeal urging this Court, at the very least, to enforce the arbitration agreement between them and the plaintiff, before allowing Ms. Utley to proceed with her Title VII claims in a judicial forum. For the reasons set forth, we affirm the district court.

Plaintiff began her employment with Goldman Sachs as a fixed income sales trainee in the New York office during July of 1985. Goldman, Sachs & Co. is an investment banking firm and broker-dealer and a member of numerous securities exchanges, including the New York Stock Exchange, Inc. Around February 10, 1986 she was assigned to the Money Market Department of the Boston office of GSMMI, where she was the only woman sales associate in the Department. In the fall of 1987, a supervisor, Mr. Paul Gaul, asked the plaintiff to consider a transfer to the New York office. The plaintiff believed that she was singled out for transfer on the basis of her sex, and both parties engaged the assistance of counsel. Appel-

lee's Brief at 5. When Ms. Utley refused to accept the transfer, she was terminated.

Plaintiff filed timely complaints with the Massachusetts Commission against Discrimination and the Equal Employment Opportunity Commission alleging sexual harassment and sex discrimination. On December 6, 1987, she filed a Complaint in Massachusetts Superior Court.[1] On April 6, 1988, the plaintiff filed an action in the United States district court for the District of Massachusetts alleging that her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sec. 2000e–2 *et seq.* ("Title VII") were violated. In her Complaint, plaintiff alleged that she was subjected to a hostile working environment in which women were demeaned. She also alleged that defendants' efforts to transfer her to New York and their decision to terminate her employment constituted acts of discrimination on account of her sex. The defendants moved the district court, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. sec. 3, for an Order staying all proceedings in district court pending the completion of arbitration.

Defendants claimed that arbitration was mandated by Utley's execution of a Uniform Application for Securities Industry Registration or Transfer ("Form U–4"), which stated that she agreed to arbitrate any dispute which arose between her and her firm.[2] The plaintiff opposed defendants' motions on the grounds, *inter alia*, that plaintiff's Title VII claim is not referable to arbitration under the FAA.

In *Alexander v. Gardner–Denver*, the Supreme Court ruled that, despite a collective bargaining agreement to arbitrate all

---

1. The Complaint consisted of eight counts, including allegations of sexual harassment and discrimination in violation of G.L.M. c. 151B; violation of G.L.M. c. 12 sec. 11I; and wrongful termination. Defendants moved to dismiss, or in the alternative, to stay the state proceedings on the grounds that plaintiff had agreed to arbitrate all claims. After an appeal of the superior court's denial of these motions, the case was remanded to superior court for a determination of the agreement's validity, and a determination of which claims, if any, were arbitrable. The superior court (Rouse, J.) held that the arbitra-

tion agreement was valid, and that the plaintiff must arbitrate her contract and tort claims. The court ruled that the plaintiff could pursue her sex discrimination and civil rights claims in the judicial forum. *Utley v. Goldman, Sachs & Co. et al*, CA 87–6735 (Mass.Sup.Ct., May 26, 1989) (Memorandum and Order denying Defendants' Motion to Compel Arbitration).

2. Ms. Utley disputes the validity of at least one of two Form U–4 agreements. We form no opinion about its validity, except to assume for the purposes of this opinion that it was a valid agreement.

disputes, an employee could not prospectively waive his or her right to a judicial forum on an employment discrimination claim. While acknowledging the existence of a strong federal policy in favor of arbitration, the Court determined that the scheme of Title VII placed ultimate responsibility for its enforcement with federal courts, gave them "plenary powers" to secure compliance, 415 U.S. at 45, 94 S.Ct. at 1018, and determined that deferral to arbitral decisions would conflict with that rule. *Id.* at 56, 94 S.Ct. at 1023.

The Court further decided that the legislative history of Title VII "manifests a Congressional intent to allow an individual to pursue *independently* his rights under both Title VII and other applicable state and federal statutes." *Id.* at 48, and n. 9, 94 S.Ct. at 1019 and n. 9 (emphasis added). The Court also noted that the "choice of forums inevitably affects the scope of the substantive right to be vindicated" *id.* at 56, 94 S.Ct. at 1023 (citing *U.S. Bulk Carriers v. Arguelles,* 400 U.S. 351, 359–360, 91 S.Ct. 409, 413–414, 27 L.Ed.2d 456 (1971), (Harlan, J., concurring)), and concluded that "federal policy was best accommodated by permitting an employee to pursue fully remedies under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." *Id.* at 59–60, 94 S.Ct. at 1025–1026. The Court never directly addressed whether arbitration must precede a judicial remedy but a reasonable inference from the Court's use of such language as, "permitting an employee" and "allowing an individual" to pursue both remedies is that it was not intended to mandate arbitration of Title VII claims before proceeding to a judicial forum.

In decisions following *Alexander,* the Court effectively developed a presumption of arbitrability under the F.A.A. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (burden is on party opposing arbitration to show Congressional intention to preclude waiver of judicial remedies); *see also, Shearson/American Express Inc. v.*

*McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); (FAA, 9 U.S.C. § 1 *et seq.* (1982) establishes a " 'federal policy favoring arbitration' ") (quoting *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)); *Rodriguez de Quijas v. Shearson/American Express Inc.,* —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (overruling *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), and holding that arbitration agreements are enforceable as to claims under section 12(2) of the Securities Act of 1933).

Notwithstanding this policy, however, the Court has done nothing to disturb its prior ruling in *Alexander* that arbitration agreements do not preclude an independent right of access to a judicial forum for resolution of Title VII claims. In fact, none of the recent pro-arbitration decisions by the Supreme Court involve employment discrimination claims. *See Swenson v. Management Recruiters International, Inc.,* 858 F.2d. 1304, 1306–7 (8th Cir.1988). The reason for this is the congressional intent behind Title VII. The presumption of arbitrability under the FAA will be defeated when it is "overridden by a contrary congressional command" in another statute. *Shearson,* 107 S.Ct. at 2337. The Court permits exceptions to enforcement of arbitration agreements when "Congress ... has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi,* 473 U.S. at 627–28, 105 S.Ct. at 3354–55. *See also, McDonald v. City of West Branch,* 466 U.S. 284, 289, 104 S.Ct. 1799, 1802, 80 L.Ed.2d 302. Congress has shown such an intention with regard to Title VII.

In this circuit the court has articulated previously that the proper inquiry regarding arbitrability under *Mitsubishi* is one of Congressional intent. *Page v. Moseley, Hallgarten, Estabrook, and Weeden, Inc.,* 806 F.2d 291, 300 (1st Cir.1986). We have stated that we would not preclude arbitration of federal statutory rights unless we found that Congress, either implicitly or explicitly, intended otherwise. *Id.* at 297. In *Page,* we distinguished Title VII actions

under *Alexander* from the general rule favoring arbitrability, noting that Title VII "contained an express private right of action, ... and involved adjudication of the rights of an individual under the Constitution, an inquiry that, with all due respect to arbitration, has historically been the sole province of Article III adjudication." *Id.*

That reasoning, based upon a recognition of Title VII's unique nature, continues to be valid today. The fact that Ms. Utley signed an individual employment agreement rather than a collective bargaining agreement as in *Alexander* is not significant. Similarly, defendants' attempts to read into *Alexander* and its progeny a requirement for employees to participate in arbitration prior to initiating claims in a judicial forum is inconsistent with the Congressional intent behind Title VII. As Congress has made the policy against discrimination "a highest priority," *Alexander*, 415 U.S. at 47, 94 S.Ct. at 1019, we rule that an employee cannot waive prospectively her right to a judicial forum at any time, regardless of the type of employment agreement which she signs.

Further support for this conclusion can be found in the Eighth Circuit decision of *Swenson v. Management Recruiters International, Inc.*, 858 F.2d 1304 (8th Cir. 1988). *Swenson* involved a cause of action by an employee against her former employer and her former supervisor, alleging *inter alia*, sex discrimination in violation of a Minnesota statute. The district court stayed the judicial proceedings pending arbitration of all issues pursuant to the FAA. The Court of Appeals reversed. Although that decision involved a question of preemption of state judicial remedies by the FAA, the Court carefully considered whether the FAA preempted federal judicial remedies for violations of Title VII.

As stated by the *Swenson* Court,

We conclude that in the passage of Title VII it was the congressional intent that arbitration is unable to pay sufficient attention to the transcendent public interest in the enforcement of Title VII. Title VII mandates the promotion of the public interest by assisting victims of discrimination. The arbitration process may hinder efforts to carry out this mandate. *Id.* at 1307.

We find this analysis compelling.

To summarize our opinion, the text of Title VII, while promoting conciliation and informal resolution, does not mandate exhaustion of arbitration before allowing an employee to proceed to a judicial forum. Furthermore, Title VII's statutory scheme and its legislative history clearly point to the conclusion that Congress intended to preclude even a temporary prospective waiver of judicial forum. Therefore, Ms. Utley cannot be required to participate in arbitration proceedings prior to a judicial hearing on her Title VII claims.

█ Additionally, we hold that the district court acted within its discretion when it declined to stay this action pending the resolution of state court proceedings. The decision to stay litigation of non-arbitrable claims is one left to the district court as a matter of discretion to control its docket. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. at 20 n. 23, 103 S.Ct. at 939 n. 23. *See also, Sevinor v. Merrill Lynch, Pierce, Fenner & Smith*, 807 F.2d 16, 20 (1st Cir.1986).

The Order of the district court is AFFIRMED.