**Robert D. GILMER, Plaintiff–Appellee,**

v.

**INTERSTATE/JOHNSON LANE CORPORATION, formerly known as Interstate Securities Corporation, Defendant–Appellant.**

**No. 88–1796.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 2, 1989.

Decided Feb. 6, 1990.

James Bernard Spears, Jr. (Robert S. Phifer, Haynsworth, Baldwin, Miles, Johnson, Greaves and Edwards, P.A., Greenville, S.C., on brief), for defendant-appellant.

W.R. Loftis, Jr. (John T. Allred, Robin E. Shea, Petree, Stockton & Robinson, Winston–Salem, N.C., on brief), for plaintiff-appellee.

Before WIDENER and WILKINSON, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

WILKINSON, Circuit Judge:

The question before us is whether an agreement between an individual employee and his employer compelling arbitration of all claims arising out of employment is enforceable when the claim against the employer is one for violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.* (1982 & Supp.1986). The district court ruled that such an arbitration agreement is not enforceable in the face of a claim arising under the ADEA. Because we find no congressional intent to preclude enforcement of arbitration agreements in the ADEA's text, its legislative history, or its underlying purposes, *see Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), we reverse the judgment of the district court.

## I.

Robert D. Gilmer was hired by Interstate/Johnson Lane in May 1981 as a manager of financial services. As required for his employment, Gilmer registered as a securities representative with the New York Stock Exchange. Gilmer's application for his securities registration contained an arbitration clause pursuant to which he agreed to the arbitration of any disputes between himself and his employer arising out of his employment or the termination of his employment.[1]

In November 1987, Gilmer's employment was terminated. In August 1988, he brought suit against Interstate in federal court alleging that his termination violated the ADEA. Interstate filed a motion to compel arbitration as authorized under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et*

*seq.* The district court denied the motion, ruling that arbitration procedures are inadequate for the final resolution of rights created by the ADEA and that Congress intended to protect ADEA plaintiffs from waiver of the judicial forum.

Interstate appeals. 28 U.S.C. § 1292(a)(1).

## II.

■ In a trilogy of recent cases, *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and *Rodriguez de Quijas v. Shearson/American Express, Inc.*, —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), the Supreme Court has endorsed arbitration as an effective and efficient means of dispute resolution.[2] The Court has emphasized that the Federal Arbitration Act (FAA) "establishes a 'federal policy favoring arbitration,'" *McMahon*, 107 S.Ct. at 2337 (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)), which "is at bottom a policy guaranteeing the enforcement of private contractual arrangements," *Mitsubishi*, 473 U.S. at 625, 105 S.Ct. at 3353. Under the FAA, enforcement of an arbitration agreement is equally appropriate whether the parties have agreed to arbitrate rights created by contract or by statute, since "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* at 628, 105 S.Ct. at 3354–55. An arbitra-

---

**1.** Paragraph 5 of Gilmer's securities registration application provided: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules, constitutions or bylaws of the organizations with which I register...." Rule 347 of the New York Stock Exchange states:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered

representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.

**2.** The dissenting opinion mentions none of these three cases (or other related decisions). It is astonishing to believe that it would ignore entirely the Supreme Court's recent pronouncements on the very subject of this case.

tion agreement is unenforceable only if Congress has evinced an intention to preclude waiver of the judicial forum for a particular statutory right, or if the agreement was procured by fraud or use of excessive economic power. *See id.* at 627–28, 105 S.Ct. at 3354–55; *McMahon,* 107 S.Ct. at 2337.

■ The *McMahon* Court established the framework for determining whether an arbitration agreement is enforceable under the FAA. The Court ruled that the Act standing alone mandates enforcement of arbitration agreements, but that Congress can override this mandate by indicating that it is precluding waiver of the judicial forum for the particular statutory right at issue. The burden is on the party opposing arbitration to show that Congress intended to preclude waiver. Congressional intent is to be deduced from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes. *McMahon,* 107 S.Ct. at 2337–38 (citing *Mitsubishi,* 473 U.S. at 628, 632–37, 105 S.Ct. at 3356–59).

■ We find nothing in the text, legislative history, or underlying purposes of the ADEA indicating a congressional intent to preclude enforcement of arbitration agreements. Arbitration is nowhere mentioned in the text of the statute, and "[t]his silence in the text is matched by silence in the statute's legislative history." *McMahon,* 107 S.Ct. at 2344. Nor is there any statement on the part of Congress to indicate that a federal judicial forum is the only appropriate forum for vindication of the rights created by the ADEA. Moreover, we see no conflict between arbitration and the underlying purposes of the ADEA which would preclude arbitration of ADEA claims.

The Third Circuit majority in *Nicholson v. CPC Int'l, Inc.,* 877 F.2d 221 (3d Cir. 1989), which refused to enforce arbitration of an ADEA claim, conceded that in the statutory language and legislative history of the ADEA it could "find no direct reference to arbitration" and that it was therefore forced to "draw inferences from Congress' actions." *Id.* at 225. Courts should

be reluctant, however, to imply in a statute an intention to preclude enforcement of arbitration agreements where Congress has not expressed one, particularly in light of the countervailing intention expressed by Congress in the FAA. Gilmer has nonetheless advanced numerous arguments why we should do so, and we shall proceed to address them.

III.

Gilmer argues, in reliance upon *Nicholson,* that congressional intent to preclude waiver of the judicial forum can be surmised from the role Congress has established for the Equal Employment Opportunity Commission (EEOC) in the enforcement of the ADEA. The ADEA empowers the EEOC to investigate age discrimination claims and to bring enforcement actions to ensure compliance with the statute's provisions. 29 U.S.C. § 626(a), (b). The EEOC is authorized to inspect places of employment, to question employees, and to impose recordkeeping and reporting requirements on employers. 29 U.S.C. § 626(a). It may also endeavor to effect voluntary compliance with ADEA provisions through informal methods of conciliation, conference, and persuasion. 29 U.S.C. § 626(b). Gilmer contends, again by reference to *Nicholson,* that if arbitration agreements are enforced, the EEOC will no longer be able to function as a protector of employee rights under the ADEA. He argues that since filing a charge with the EEOC is not a prerequisite for arbitral action as it is for judicial action under the ADEA, an employee who is required to adhere to his agreement and proceed to arbitration will no longer file a charge. Thus, he maintains, the EEOC will be deprived of the charge both as an incentive to undertake conciliation and as notification in case it wishes to institute an enforcement action.

We disagree. The EEOC's continued effectiveness is not now, nor has it ever been, dependent on its participation in the resolution of *all* claims under the ADEA. For example, it is well-settled that an individual may voluntarily settle his ADEA claims without EEOC involvement. *See Moore v.*

*McGraw Edison Co.*, 804 F.2d 1026, 1033 (8th Cir.1986); *Runyan v. National Cash Register Corp.*, 787 F.2d 1039, 1044–45 (6th Cir.1986). Arbitration can achieve much the same vindication of individual rights and relief of agency dockets as voluntary, non-supervised settlements. *See Coventry v. United States Steel Corp.*, 856 F.2d 514, 522 n. 8 (3d Cir.1988). Of course, nothing about the arbitral process would preclude an individual from filing a general charge against his employer with the EEOC which the EEOC would be empowered to investigate, conciliate, or enforce through litigation. We do not think, however, that implementation of the statutory purpose is dependent upon the EEOC's involvement in each and every allegation of age discrimination. For example, if the ADEA complainant prevails at arbitration, the EEOC may indeed be deprived of a charge; however, it is difficult to see what difference EEOC involvement would have made in the vindication of that litigant's rights.

Further, we think it clear that Congress contemplated that entities other than the EEOC and federal courts would play important roles in remedying age discrimination. *See Mathis v. Allied Wholesale Distributors, Inc.*, 680 F.Supp. 1545, 1547 (M.D.Ga. 1988) (state courts possess concurrent jurisdiction over ADEA suits). The premise of the Federal Arbitration Act is the availability to parties of multiple forums rather than the imposition upon them of a single forum. If litigants believe that arbitration offers a prompter, more expert, and less expensive way to resolve their differences, Congress has decreed that such an option be open to them. *See Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3334–55. We are reluctant to conclude that the mere fact of administrative involvement in a statutory scheme of enforcement operates as an implicit exception to the presumption of arbitral availability under the FAA. The availability of arbitration under the securities acts in *Rodriguez* and *McMahon* indicates that arbitrability is not precluded by the presence of an agency with statutory powers of enforcement, *see* 15 U.S.C. §§ 77t, 78u (Securities and Exchange Commission (SEC) right to bring enforcement actions).

While there are, of course, differences between the role of the SEC under the securities acts and that of the EEOC under the ADEA, namely the filing of a charge as a precondition to a lawsuit under the latter statute, these differences do not rise to the level of an affirmative congressional expression of waiver preclusion. As we have noted, the roles of arbitration and the EEOC are harmonious because neither the filing of an individual charge nor an action of agency enforcement is in any way forbidden by the election of arbitration.

Gilmer also contends that congressional intent to preclude waiver can be found in the funding statute for the EEOC. He points to language in the statute directing "[t]hat none of the funds may be obligated or expended by the Commission to give effect to any policy or practice pertaining to unsupervised waivers under the Age Discrimination in Employment Act." P.L. No. 100–459, 102 Stat. 2186, 2216 (1988); *see also* P.L. No. 100–202, 101 Stat. 1329, 1329–31 (1987). We find nothing in this statement to indicate, however, that Congress intended to preclude waiver of a procedural right such as forum selection; instead, we think Congress was referring to waiver of the substantive rights guaranteed by the ADEA. Even if Congress were prohibiting disbursal of EEOC funds to encourage arbitration of ADEA claims, we would be hesitant to find congressional intent to preclude entirely the enforcement of arbitration agreements in a source with so attenuated a connection to the ADEA as the EEOC funding statute.

Even if the statutory enforcement powers of the EEOC would not be impaired, Gilmer argues that arbitration is inconsistent with the ADEA's placement of initial adjudicatory authority in a court rather than an agency. He points, by way of *Nicholson*, to the fact that Congress declined to adopt for the ADEA an enforcement scheme modeled after the National Labor Relations Act (NLRA), instead choosing a scheme modeled after the Fair Labor Standards Act (FLSA). He argues that this choice indicates a congressional preference for the resolution of ADEA dis-

putes in a judicial, rather than an arbitral, forum.

We again disagree. The enforcement model based on the NLRA which Congress rejected provided for the resolution of age discrimination claims in agency proceedings with judicial review available through petition to the federal courts of appeals. *See* 113 Cong.Rec. 2795 (1967), *reprinted in* EEOC, *Legislative History of the Age Discrimination in Employment Act* 69 (1981) [hereinafter *ADEA History*]. The enforcement model based on the FLSA which Congress ultimately adopted authorized the Secretary of Labor (later the EEOC) to enforce the ADEA through investigation, conciliation, and, if necessary, through enforcement actions brought in the courts. *See* H.R.Rep. No. 805, 90th Cong., 1st Sess. 5–6 (1967), *reprinted in ADEA History* at 78–79; U.S.Code & Admin.News 1967, p. 2213; Sen.Rep. No. 723, 90th Cong., 1st Sess. 5, 13–14 (1967), *reprinted in ADEA History* at 109, 117–18. However, this choice of courts over agencies as the initial forum for the resolution of ADEA disputes says nothing about Congress' attitude toward arbitration. Unlike either courts or agencies, arbitration is a forum selected by mutual agreement of the parties. Congress' choice of an enforcement scheme in which ADEA suits are brought in a judicial forum simply does not manifest an intention to prevent parties from reaching a private contractual agreement to submit their disputes to arbitration.

Gilmer next argues that the broader remedial powers possessed by courts over arbitrators indicate a congressional intent to preclude waiver. He asserts that arbitrators do not command the power to award broad equitable relief which courts possess under 29 U.S.C. § 626(b) (empowering courts "to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter"). He emphasizes in particular that arbitrators lack the power to issue injunctive relief to prevent employers from engaging in future acts of discrimination, and that class actions cannot be maintained in arbitration.

We are unconvinced. Arbitrators enjoy broad equitable powers. They may grant whatever remedy is necessary to right the wrongs within their jurisdiction. Arbitrators may, for instance, order reinstatement or promotion of an employee adversely affected by age discrimination. *See Nicholson*, 877 F.2d at 240 (Becker, J., dissenting). Of course, the question of the full extent of an arbitrator's powers is not before us. However, any lack of congruence which may exist between the remedial powers of a court and those of an arbitrator is hardly fatal to arbitration. So long as arbitrators possess the equitable power to redress individual claims of discrimination, there is no reason to reject their role in the resolution of ADEA disputes. That arbitrators may lack the full breadth of equitable discretion possessed by courts to go beyond the relief accorded individual victims does not deny the utility of this alternative means of resolving disputes. In enacting the FAA and the ADEA, Congress must have been aware of the respective spheres of judicial and arbitral authority and it expressed no intention that the latter be displaced. *See Rodriguez v. United States*, 480 U.S. 522, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (in passing a statute, Congress is presumed to act "with full awareness" of existing legislation).

We are similarly unpersuaded by Gilmer's contention that the ADEA's provision of a right to jury trial indicates a congressional intent to preclude waiver. The ADEA provides only that a litigant be entitled to a jury trial should he desire it; it does not mandate that every ADEA trial be a trial by jury. ADEA litigants plainly are permitted to waive trial by jury. *See Washington v. New York City Bd. of Estimate*, 709 F.2d 792, 797–99 (2d Cir.1983); *Scharnhorst v. Independent School Dist. #710*, 686 F.2d 637, 641 (8th Cir.1982). If that waiver is permitted, we fail to see how the preference of parties for an arbitral forum has somehow been silently proscribed.

Nor could Gilmer successfully contend that the ADEA's provision of liquidated damages for willful violations, 29 U.S.C. § 626(b), evinces an intent to preclude

waiver of the judicial forum. In *Mitsubishi* and *McMahon*, the Supreme Court rejected arguments that arbitration would vitiate the treble damages provisions in the Clayton Act and the Racketeer Influenced and Corrupt Organizations Act. *See Mitsubishi*, 473 U.S. at 635–37, 105 S.Ct. at 3358–59; *McMahon*, 107 S.Ct. at 2344–45. While recognizing that the treble damages provisions are primarily compensatory in nature, the Court emphasized that those provisions, like that for liquidated damages under the ADEA, play an important role in deterrence. *See Mitsubishi*, 473 U.S. at 635–36, 105 S.Ct. at 3358–59 (Clayton Act); *McMahon*, 107 S.Ct. at 2345 (RICO statute); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 623–24, 83 L.Ed.2d 523 (1985) (ADEA). In fact, it would be the unusual statute whose remedial provisions did not serve both compensatory and deterrent purposes. This mixing of compensatory and deterrent functions in the remedial provisions of a statute in no way interferes with an arbitrator's ability to effectuate the purposes of a statute. There is no reason, for example, why an arbitrator of an ADEA dispute cannot award liquidated damages should he or she find a willful violation of the statute. "[S]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Mitsubishi*, 473 U.S. at 637, 105 S.Ct. at 3359. Even if arbitration were somehow thought to impinge on the ability of the ADEA's liquidated damages provision to fulfill its role as a deterrent to *willful* violations of the statute, it certainly would not interfere with the ordinary, run-of-the-mill ADEA case which does not implicate the liquidated damages remedy. *See McMahon*, 107 S.Ct. at 2345.

Gilmer also argues that the arbitration agreement should not be enforced because it constituted a prospective waiver. This plainly is not the law. Prospective waiver of the judicial forum lies at the heart of the FAA, where it is not only permitted but encouraged. In addition, prospective waivers were clearly approved in *Mitsubishi*, *McMahon*, and *Rodriguez*. In all three

cases, the Court enforced arbitration agreements which were entered into before the cause of action at issue arose. *See Mitsubishi*, 473 U.S. at 617–18, 105 S.Ct. at 3349–50; *McMahon*, 107 S.Ct. at 2335–36; *Rodriguez*, 109 S.Ct. at 1918–19. If, however, Gilmer means that prospective waivers must be examined to determine whether they were knowing and voluntary, then this certainly is true. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1021, n. 15, 39 L.Ed.2d 147 (1974). However, Gilmer has never asserted that his waiver was anything other than knowing and voluntary, nor is there anything to lead us to that conclusion.

Our holding is further buttressed by the fact that it is well-established that federal courts need not always be the forum for the resolution of ADEA claims. The grant of concurrent jurisdiction to state and federal courts in the ADEA allows ADEA claimants to bring their claims in state court in the first instance. *See Mathis*, 680 F.Supp. at 1547; *Jacobi v. Highpoint Label, Inc.*, 442 F.Supp. 518, 520 (M.D.N.C. 1977). Thus, Congress clearly did not intend that all ADEA disputes be resolved in federal court; rather, it contemplated a more flexible scheme for the resolution of individual ADEA claims. In fact, Congress' grant of concurrent jurisdiction over ADEA suits may evince an affirmative intent, apart from that contained in the FAA, to permit waiver of the judicial forum. In *Rodriguez*, the Court noted that congressional legislation providing for concurrent jurisdiction constituted an "explicit authorization for complainants to waive [federal court procedural] protections by filing suit in state court." 109 S.Ct. at 1920. The Court went on to declare that "arbitration agreements, which are 'in effect, a specialized kind of forum-selection clause,' should not be prohibited ... since they, like the provision for concurrent jurisdiction, serve to advance the objective of allowing [claimants] a broader right to select the forum for resolving disputes, whether it be judicial or otherwise." *Id.* at 1921 (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270

(1974)). The grant of concurrent jurisdiction in the ADEA evidences, if anything, a congressional intent to provide a broad right of forum selection, including the right to elect arbitration.

Finally, there is no reason to suppose that ADEA claims are inherently ill-suited to arbitration. They involve in the main simple, factual inquiries. In ruling that antitrust and RICO claims were not beyond the ken of arbitrators, the Supreme Court brushed aside objections that such statutory claims were too complex for arbitrators to handle. *See McMahon*, 107 S.Ct. at 2344. ADEA disputes are, to put it mildly, no more generically complex than claims pressed under the Sherman Act and RICO. That a proof scheme has evolved to establish a case of age discrimination should not delude courts into thinking that the ultimate question in ADEA cases is of a type which only federal judges are capable of resolving. In fact, ADEA disputes are often presented to the jury as requiring resolution of a single question of ultimate fact involving assessment of credibility and of disputed rationales for employer action. We have noted that " '[i]n cases of this type, the best charge may simply be one that emphasizes that plaintiff must prove, by a preponderance of the evidence, that he was discharged because of his age.... ' " *Nelson v. Green Ford, Inc.*, 788 F.2d 205, 209 (4th Cir.1986) (quoting *Loeb v. Textron*, 600 F.2d 1003, 1018 (1st Cir.1979)). Whether a particular employee was maltreated on account of his age is a straightforward factual matter that is well within the capabilities of an arbitrator, and the presumption of arbitrability in the FAA must therefore apply.

## IV.

Gilmer points to three cases decided before the Supreme Court's recent trilogy and argues that those cases are controlling here. In *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court held that an employee required to arbitrate under a collective-bargaining agreement was entitled to a trial de novo on his Title VII claim despite having lost at arbitration. Gilmer argues that because Title VII and the ADEA are similar statutory schemes proscribing discrimination in employment, prospective waiver of the judicial forum should be prohibited under the ADEA just as it is under Title VII. Gilmer also cites *Barrentine v. Arkansas–Best Freight Systems*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), holding that a claimant under the FLSA was not barred by the unfavorable decision of an arbitrator, and *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), holding that an arbitrator's decision on a § 1983 claim has no res judicata or collateral estoppel effect. Gilmer notes that these three cases were all cited with approval by the Court in *Atchison, Topeka & Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), a post-*Mitsubishi* case, and that they therefore survive *Mitsubishi*.

We find these cases inapposite. First, none of the three even mention the FAA. Therefore, the Court's analysis was not governed by the " 'federal policy favoring arbitration' requiring that '[courts] rigorously enforce agreements to arbitrate.' " *McMahon*, 107 S.Ct. at 2337 (quoting *Cone Memorial Hospital*, 460 U.S. at 24, 103 S.Ct. at 941, and *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)). The cases also question the adequacy of arbitral factfinding procedures and the competence of arbitrators to resolve complex legal questions. *See Gardner–Denver*, 415 U.S. at 57–58, 94 S.Ct. at 1024–25; *Barrentine*, 450 U.S. at 743–45, 101 S.Ct. at 1446–47; *McDonald*, 466 U.S. at 290–91, 104 S.Ct. at 1803. In its more recent trilogy of cases, however, the Court explicitly rejected such arguments. In *Mitsubishi*, it stated that "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." 473 U.S. at 626–27, 105 S.Ct. at 3353–54. In *McMahon*, it emphasized that "the streamlined procedures of arbitration do not entail any consequen-

tial restriction on substantive rights." 107 S.Ct. at 2340. Just last term in *Rodriguez,* the Court declared that "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants ... has fallen far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." 109 S.Ct. at 1920. Any reluctance to entrust statutory claims to the arbitral process because of the adequacy of arbitral procedures or the competence of arbitrators is clearly no longer well-founded.

Second, *Gardner–Denver, Barrentine,* and *McDonald* all involved arbitration under collective bargaining agreements. In all three cases, the Court stressed that the statutory schemes at issue were intended to provide individuals with some minimum level of protection, and that that protection might be lost if a union represented the employee in the grievance proceeding and thus controlled the employee's arbitration. *See McDonald,* 466 U.S. at 291 n. 10, 104 S.Ct. at 1803 n. 10. It noted that in arbitration under a collective bargaining agreement, "the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit." *Gardner–Denver,* 415 U.S. at 58 n. 19, 94 S.Ct. at 1024 n. 19; *see also Barrentine,* 450 U.S. at 742, 101 S.Ct. at 1445–46; *McDonald,* 466 U.S. at 291, 104 S.Ct. at 1803. *Gardner–Denver* also recognized, however, that an individual possesses greater authority over his cause of action when he pursues his claim independent of union control. *See* 415 U.S. at 52, 94 S.Ct. at 1021–22. Thus, concern about the divergent interests of employee and union simply does not exist where, as in Gilmer's case, the individual employee has agreed to arbitration of his employment disputes and will be able to press his ADEA claims in arbitration in his individual capacity.

The Court was also troubled in the three earlier cases by the fact that an arbitrator acting under the authority of a collective bargaining agreement might lack the power to invoke legislation in conflict with the bargain between the parties. *See Gard-*

ner–Denver, 415 U.S. at 53, 94 S.Ct. at 1022; *Barrentine,* 450 U.S. at 744, 101 S.Ct. at 1446–47; *McDonald,* 466 U.S. at 290–91, 104 S.Ct. at 1803–04. This concern is likewise nonexistent where arbitration proceeds according to an individual arbitration agreement. Without restrictions like those imposed by the terms of a collective bargaining agreement, an arbitrator will be free to invoke any relevant statute. Moreover, judicial review of the arbitrator's decision, though limited, is "sufficient to ensure that arbitrators comply with the requirements of the statute." *McMahon,* 107 S.Ct. at 2340. For the foregoing reasons we think it clear that *Gardner–Denver, Barrentine,* and *McDonald* do not control our decision here.

## V.

Gilmer complains that a reversal in this case would conflict with the holding of the Third Circuit in *Nicholson v. CPC Int'l, Inc.,* 877 F.2d 221 (3d Cir.1989). We acknowledge that our holding is not in accord with that of the Third Circuit. We find the reasoning of the majority opinion in *Nicholson* unpersuasive, and therefore we have respectfully chosen not to follow it. Instead, we are in agreement with Judge Becker's dissent in that case that Congress did not intend to preclude waiver of the judicial forum by ADEA claimants.

Our holding reflects nothing more than the view that courts should not strain to find in statutes what Congress has not put there. We find no congressional intent to preclude waiver of the judicial forum in the text, the legislative history, or the underlying purposes of the ADEA. We recognize that the ADEA embodies without question an important federal policy in prohibiting age discrimination. So too, however, do the Securities Act of 1933 and the Securities Exchange Act of 1934 represent, *inter alia,* an important federal policy in protecting investors from fraudulent securities transactions. Likewise, the Sherman Act reflects an important federal policy in preventing excessive concentration in relevant markets. Nonetheless, arbitration of claims under these statutes is clearly en-

couraged. *See Mitsubishi; McMahon; Rodriguez.*

Courts cannot determine whether arbitration agreements are to be enforced by making subjective judgments as to the relative importance of various federal statutes. Rather, Congress must provide clear guidance if it wishes federal courts to refrain from enforcing arbitration agreements when violations of a particular statutory right are alleged. Without such affirmative guidance in the ADEA, we are reluctant to set aside a coordinate federal statute such as the Arbitration Act.

We remain sensitive to the fact that the context in which this case arises differs somewhat from the contexts of *Mitsubishi, McMahon,* and *Rodriguez.* Whereas the statutes in those cases were primarily commercial in focus, the ADEA is a civil rights statute. Moreover, the complainants in those cases were securities customers and persons injured by antitrust violations, not employees who are allegedly victims of discrimination in the workplace. Although the beneficiaries of statutory protections may vary, the principles of statutory interpretation do not. As the ADEA is devoid of any congressional statement of intent to preclude waiver of the judicial forum, we reverse the judgment of the district court and remand the case with directions to enter an order compelling arbitration of plaintiff's claim.

REVERSED.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

I do not believe there is any distinction of significance between this case and *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). I think *Alexander* is persuasive and would follow that case here.

In *Alexander,* the collective bargaining agreement, which bound both the plaintiff-employee and his employer, specifically provided against racial discrimination and for arbitration of all claims with respect to employment.

Plaintiff was discharged and claimed the discharge was on account of racial discrimination. Through his union, he pursued the matter to arbitration and lost, while at the same time he was pursuing his statutory claim under Title VII of the Civil Rights Act of 1964. The district court dismissed plaintiff's case, holding that plaintiff was bound by the arbitration decision and was, thus, precluded from suing his employer under Title VII. That decision was affirmed by the court of appeals. The Supreme Court, however, reversed.

The reasoning of the Court may be briefly abstracted as follows:

While Title VII does not speak expressly to the relationship between federal courts and the arbitration provisions of union contracts, it does vest federal courts with plenary powers to enforce the statutory requirements and it specifies with precision the jurisdictional prerequisites for filing a Title VII case.

415 U.S. at 47, 94 S.Ct. at 1019.

"There is no suggestion in the statutory scheme that a prior arbitral decision either forecloses individuals' rights to sue or divests federal courts of jurisdiction."

415 U.S. at 47, 94 S.Ct. at 1019.

"In addition, legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination."

415 U.S. at 47, 94 S.Ct. at 1019 (naming EEOC, state and local agencies, and the federal courts).

"In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective bargaining agreement. By contrast, in filing a law suit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respective appropriate forums."

415 U.S. at 49–50, 94 S.Ct. at 1020–21.

The Court also rejected the arguments now made by the majority, that arbitration is as effective a remedy as is the judgment of a court; that Gilmer has waived his

rights under the ADEA; and that access to the state courts under the ADEA is a reason to enforce an exclusive remedy of arbitration and deny access to the federal courts. Of course, it is at once apparent that access to the state courts would also be denied under the majority decision.

While there are many reasons a remedy by way of arbitration is not as effective as the judgment of a court such as those mentioned in *Alexander* at 57–58, 94 S.Ct. at 1024–25: a different fact-finding process; not as complete a record; the usual rules of evidence do not apply; and lack of compulsory process, etc.; one ADEA right mentioned by the district court in this case is sufficient to determine the outcome even if that be necessary. That is the right of trial by jury which is preserved under the ADEA. 29 U.S.C. § 626(c)(2). The suggestion that this right may be waived as a justification for its non-existence in arbitration proceedings is reasoning which I do not follow. Neither do I accept it.

Likewise, the suggestion by the majority that the availability of a remedy in the state courts under the ADEA is a reason to enforce arbitration was rejected by *Alexander* at 47, 94 S.Ct. at 1019. The Court relied upon the general intent of legislative enactments in the field of civil rights to accord parallel or overlapping remedies against discrimination and mentioned as parallel remedies in Title VII cases the EEOC, state and local agencies, and the federal courts. The fact that access to the state courts has been provided under the ADEA is no more than another parallel or overlapping remedy, in my opinion.

The Court, in *Alexander* at 51, 94 S.Ct. at 1021, *et seq.*, explicitly decided that "there can be no prospective waiver of an employee's rights under Title VII." 415 U.S. at 51, 94 S.Ct. at 1021. I think this proposition must be held to apply to rights under the ADEA and that there can be no prospective waiver thereof, contrary to the majority holding.

The suggestion the majority makes to the effect that the Federal Arbitration Act requires the enforcement of the arbitration provision in this case, while it did not in *Gardner–Denver*, for the principal reason that it was not considered in *Gardner–Denver*, also, I think, does not bear scrutiny. With that as a starting point, the majority reasons that "the Court's analysis was not governed by the 'federal policy favoring arbitration' requiring that '[courts] rigorously enforce agreements to arbitrate.'"

While it is true that the Federal Arbitration Act was not explicitly mentioned in *Alexander*, it is doing a disservice to the Court, I think, to imply that it was unaware of a federal policy favoring arbitration. Indeed, *Alexander* referred to *United Steelworkers of America v. Enterprise Wheel and Car Company*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), one of the famous *Steelworkers Trilogy* which provided explicitly that "a major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement." *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350–51, 4 L.Ed.2d 1409 (1960). So any public policy reason to enforce arbitration to the exclusion of the consideration of the claim by the federal courts was stronger in *Alexander* than it is here, being a part of the national labor policy. If that policy was not strong enough in *Alexander* to require the literal enforcement of an arbitration provision to the exclusion of a statutory right, certainly any policy deferring to an alternate forum for disputes resolution does not rise so high.

To sum it up, the plaintiff, Gilmer, meets the jurisdictional prerequisites for filing a case under the ADEA. The ADEA does not foreclose his right to sue or divest the federal courts of jurisdiction. Since *Alexander* holds that a collective bargaining agreement to arbitrate does not displace the federal courts of their jurisdiction in a Title VII case, a private agreement to arbitrate should not be held to displace the federal courts of their jurisdiction under the ADEA.

I would affirm the order appealed from.