Lauryn Agnew **BIERDEMAN**, Plaintiff,

v.

**SHEARSON LEHMAN HUTTON,
INC.**, Defendant.

**No. C–89–4473 RFP.**

United States District Court,
N.D. California.

June 20, 1990.

Kathleen Lucas–Wallace, Deborah C. England, Law Offices of Kathleen Lucas–Wallace, San Francisco, Cal., for plaintiff.

Peter R. Boutin, Lisa M. Bertain, Keesal, Young & Logan, San Francisco, Cal., for defendant.

## ORDER

PECKHAM, District Judge.

### I. INTRODUCTION.

We are presented with a motion by defendant Shearson Lehman Hutton ("Shearson") to stay proceedings and compel arbitration in this sex discrimination suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff Lauryn Agnew Bierdeman was employed by Shearson as an institutional equity salesperson. She alleges that Shearson first reduced her compensation and ultimately terminated her employment because of her sex and in retaliation for her twice taking pregnancy leave. After timely submitting her claim to the Equal Employment Opportunity Commission ("EEOC") and receiving a notice of right to sue, Bierdeman filed this action in federal district court. She has refused to submit to arbitration, arguing that the Title VII statute and judicial authority interpreting it entitle her to pursue a remedy in federal court without first submitting her grievance to binding arbitration.

Defendant Shearson now moves to stay Bierdeman's action and to compel her to submit her claim to arbitration. Shearson argues that Bierdeman is contractually bound to arbitrate her claim by the constitutions and regulations of the New York Stock Exchange ("NYSE"), National Association of Securities Dealers ("NASD"), and American Stock Exchange ("AMEX"), which she agreed to comply with when she accepted employment with defendant. Shearson wants Bierdeman to submit to arbitration as provided by the rules of these organizations.

Shearson attempts to distinguish Supreme Court authority holding that arbitration agreements cannot prevent Title VII plaintiffs from pursuing their remedies in federal court. In doing so, Shearson separates the Supreme Court's decisions on the arbitrability of various statutory claims into decisions involving collective bargaining agreements and decisions involving privately negotiated commercial arbitration agreements such as those implicated here. While this categorization allows Shearson to distinguish Supreme Court precedent holding that Title VII plaintiffs do not waive their right to a judicial remedy by signing an arbitration agreement, it is nevertheless spurious. The decisions which Shearson relies upon in arguing for enforcement of the NYSE, NASD, and AMEX arbitration provisions without exception involve statutes other than Title VII.

## II. BACKGROUND.

Plaintiff Lauryn Bierdeman went to work for Lehman Brothers in May, 1983, as an institutional equity salesperson. The following year, defendant Shearson acquired Lehman Brothers. When plaintiff accepted her position, she signed an agreement which provided in pertinent part, "I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register...." Shearson alleges that plaintiff then registered with the NYSE, the NASD, and AMEX, and that the constitutions and rules of those organizations require her to arbitrate her claim.

Bierdeman claims that Shearson discriminated against her on the basis of her sex; specifically, she contends that her bonus compensation was cut and that she was eventually terminated because she took pregnancy leave. Bierdeman was the only female employee in Shearson's West Coast Equity Sales Department. She took two three-month pregnancy leaves during the time she was employed by Shearson—the first from October through December of 1985, and the second from May through July of 1987. She alleges that her supervisors reduced the number of accounts that she managed and reduced the number of "bonus points" she received after her first pregnancy leave. After her second leave, she alleges that her bonus points were again cut and that Shearson removed a Quotron machine which she contends she needed in order to be able to perform her job. She was terminated in December 1987 and replaced with a male employee on the same day.

Bierdeman contends that Shearson agents and employees told her that her pregnancy leaves were not in the company's best interests. She contends that she heard through a client that Shearson told the client she was terminated because she preferred to be at home with her children.

Bierdeman filed a complaint with the EEOC and received a notice of right to sue. She timely filed this action on December 18, 1989. Shearson has formally demanded that Bierdeman submit her grievance to arbitration. Demand Letter, Declaration of Jeffrey L. Friedman at Exhibit 2. Plaintiff maintains that she is not compelled to do this.

## III. DISCUSSION.

Defendant Shearson's position is that plaintiff agreed at the time of accepting employment to submit any complaints against Shearson to arbitration. In support of this position, Shearson relies upon her agreement, quoted above, to comply with the arbitration regulations of any self-regulating organizations ("SRO's") of securities brokers that she registered with.

Bierdeman registered with the NYSE, the NASD and AMEX. Declaration of Jeffrey L. Friedman at ¶ 7 and at Exhibit 1. NYSE Rule 600(a) provides that any dispute or claim arising between a member organization and an "associated person" of that member organization shall be submitted to arbitration. The NASD Code of Arbitration Procedure § 8(a) similarly provides for the submission to arbitration of "any dispute, claim, or controversy arising out of or in connection with the business of any member of the association." Shearson asserts that the AMEX arbitration rules also bind plaintiff to submit to arbitration. Ninth Circuit authority holds that the arbitration provisions contained in the rules of the various SRO's have contractual force. *Muh v. Newberger, Loeb, & Co., Inc.*, 540 F.2d 970, 973 (9th Cir.1976). Therefore, we find that Shearson has made a *prima facie* showing that a contract existed between it and Bierdeman requiring that she submit any grievances between her and Shearson to arbitration by the procedures set up by one of the SRO's.[1]

---

1. We assume for purposes of argument, but do not decide, that this agreement is valid. Plaintiff has challenged the validity of the agreement to submit to arbitration, characterizing it as a contract of adhesion. While the Ninth Circuit has rejected the proposition that NASD and NYSE arbitration agreements can be defined as unconscionable as a matter of law, *Cohen v. Wedbush, Noble, Cooke & Co.*, 841 F.2d 282, 286 (9th Cir.1988), the possibility remains that such

However, even if Bierdeman's agreement to submit disputes with Shearson to arbitration in accordance with SRO rules constitutes a valid contract, it nevertheless is unenforceable. A line of Supreme Court cases holds that a Title VII plaintiff does not prospectively waive her right to pursue relief in federal court when she agrees to arbitration of disputes.

The seminal case in this area is *Alexander v. Gardner–Denver Company*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Alexander*, the Court held that a prior arbitration decision finding that the plaintiff's claim had no merit could not foreclose plaintiff's right to bring a Title VII race discrimination claim in federal court. The Court wrote:

> [L]egislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination.... Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective bargaining agreement. 415 U.S. at 47–49, 94 S.Ct. at 1019–20.

So long as the plaintiff satisfied the Title VII jurisdictional requirements of presenting his claim to the EEOC and receiving a notice of right to sue, the claim could be litigated in federal court despite the arbitrator's decision. *Id.* at 45, 94 S.Ct. at 1018.

The Supreme Court elaborated on *Alexander* in *Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), when it held that an adverse arbitration decision had no preclusive effect on a Fair Labor Standards Act plaintiff's right to litigate based on the same facts submitted to arbitration. The *Barrentine* Court distinguished between contractual rights and statutory rights "designed to provide minimum substantive guarantees to individual workers," finding that the latter were so significant that

courts should not defer to arbitral decisions.

While the Supreme Court did not directly hold in *Alexander* that agreements to submit to arbitration of claims arising under Title VII are not enforceable, other Circuits have applied the *Alexander* line of cases to this effect. In *Swenson v. Management Recruiters*, 858 F.2d 1304 (8th Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989), the Eighth Circuit relied on *Alexander* to find that Title VII claims were simply not subject to arbitration, finding that "Congress did not intend federal judicial proceedings in discrimination cases to be preempted by employment arbitration agreements." 858 F.2d at 1306. Similarly, the First Circuit held in *Utley v. Goldman Sachs & Co.*, 883 F.2d 184 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 842, 107 L.Ed.2d 836 (1989), that an employee cannot prospectively waive her rights to sue under Title VII even where she signs an arbitration agreement. It should be noted that the *Utley* case is directly on point, in that it involved a female employee bringing a sex discrimination suit which the employer asserted was subject to arbitration under stock exchange rules because of the same type of U–4 form agreement at issue here.

Shearson appears to admit that *Alexander* renders Title VII claims non-arbitrable; however, it attempts to argue that *Alexander* should be limited to the collective bargaining agreement context. In doing so, Shearson focuses not on the distinction between Supreme Court precedent on arbitration of Title VII as opposed to other types of claims, but on the distinction between arbitration agreements in the group as opposed to the individual context. Shearson relies on several Supreme Court cases finding that private commercial arbitrations agreements were enforceable. None of the cases cited were in the Title VII context, however. *See, e.g., Mitsubishi v. Soler Chrysler–Plymouth*, 473 U.S. 614, 105

---

agreements could be found unconscionable under certain circumstances. Determining whether plaintiff truly lacked meaningful power to refuse the arbitration provision or to bargain

over its terms, however, would require an evidentiary hearing. Because we dispose of this motion on the grounds discussed below, we find that it is unnecessary to conduct such a hearing.

S.Ct. 3346, 87 L.Ed.2d 444 (Sherman Act); *Shearson American Express v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (Civil RICO treble damages claim); *Rodriguez de Quijas v. Shearson American Express,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (Securities Exchange Act claim).

Drawing this distinction between the collective bargaining and private arbitration agreement context has been rejected in two other circuits as an incorrect interpretation of *Alexander.* The Eighth Circuit in *Swenson,* for example, found that *Alexander* "turned not on the fact that a collective bargaining arbitration was involved, but instead on the unique nature of Title VII." 858 F.2d at 1306. In *Utley,* the First Circuit also found that *Alexander* turned on the Title VII issue and could not be distinguished on grounds that it applied only to agreements to arbitrate contained in collective bargaining agreements.

We note that some time was devoted at oral argument to discussion of the persuasive effect of various cases regarding the arbitrability of discrimination claims arising under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Having reviewed the cases cited by the parties, we do not find support in this line of reasoning for Shearson's position on the arbitrability of Title VII claims. First, the authority is clearly divided concerning the arbitrability of ADEA claims. While the Fourth Circuit has held ADEA claims to be arbitrable, *Gilmer v. Interstate/Johnson Lane Corp.,* 895 F.2d 195 (4th Cir.1990), the Third Circuit has held them to be non-arbitrable, *Nicholson v. CPC International, Inc.,* 877 F.2d 221 (3rd Cir.1989).

Second, the court is not persuaded that even those courts finding ADEA claims arbitrable would apply the same reasoning to Title VII claims. For example, in *Gilmer,* the Fourth Circuit noted that an arbitration agreement would be unenforceable where "Congress has evinced an intention to preclude waiver of the judicial forum for a particular statutory right." 895 F.2d at 197. While the Fourth Circuit found no

indication of such Congressional intention with respect to ADEA, the Supreme Court found that such intention exists with respect to Title VII claims. *Alexander,* 415 U.S. at 51–52, 94 S.Ct. at 1021–22. Thus, we do not find the Fourth Circuit's decision in *Gilmer* persuasive on the question of whether arbitration of Title VII claims should be compelled.

Finally and most significantly, Ninth Circuit authority conflicts with Shearson's position. In *Criswell v. Western Airlines,* 709 F.2d 544 (1983), the Ninth Circuit relied on the Supreme Court's decision in *Alexander* to reject deference to an arbitral decision in an ADEA case. In doing so, the court specifically drew the analogy between ADEA and Title VII claims. 709 F.2d at 548. Given that the Ninth Circuit has disfavored arbitration of ADEA claims on the rationale that the Supreme Court does not compel deference to arbitral decisions in the Title VII context, we find Shearson's argument regarding ADEA unpersuasive.

## IV.  CONCLUSION.

For the reasons set forth above, we find that plaintiff could not prospectively waive her right to a judicial determination of her Title VII claim. Accordingly, defendant's motion to stay proceedings and compel arbitration is hereby denied.

IT IS SO ORDERED.