905 F.2d 104
 53 Fair Empl.Prac.Cas. 529,
54 Empl. Prac. Dec. P 40,061
Joan Chason ALFORD, Plaintiff-Appellee,
v.
DEAN WITTER REYNOLDS, INC. and Don L. Harris, Defendants-Appellants.
 No. 89-2599.
 United States Court of Appeals,
Fifth Circuit.
 July 11, 1990.
Rehearing Denied Aug. 3, 1990.
 
 Raymond L. Kalmans, Joseph G. Galagaza, Neel, Hooper & Kalmans, Houston, Tex., for defendants-appellants.
 Stuart M. Nelkin, Kathy Boutchee, Nelkin & Nelkin, Houston, Tex., for plaintiff-appellee.
 Carolyn L. Wheeler, Washington, D.C., for EEO.
 Appeal from the United States District Court for the Southern District of Texas.
 Before CLARK, Chief Judge, THORNBERRY, and JONES, Circuit Judges.
 EDITH H. JONES, Circuit Judge:
 
 
 1
 Joan Alford was a stockbroker with Dean Witter Reynolds, Inc. ("Dean Witter") until she was fired for allegedly discriminatory reasons. The issue before us is whether she may pursue a Title VII lawsuit for sex discrimination and sexual harassment or must, as the company contends, submit to commercial arbitration of her claim. In 1974, a unanimous Supreme Court held that Title VII claims need not be relegated to the arbitration process governed by a collective bargaining agreement. Alexander v. Gardner--Denver Company, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). We conclude that, despite the Court's subsequent series of decisions encouraging commercial arbitration, Alexander governs this case. We therefore affirm the district court's denial of a dismissal or an order compelling arbitration. 712 F.Supp. 547.
 
 
 2
 This dispute requires us to reconcile the strong national policy favoring commercial arbitration, 9 U.S.C. Sec. 2, with the equally important federal legislation designed to combat discrimination.[1] Dean Witter forcefully argues that in recent Supreme Court jurisprudence, contractual provisions for arbitration have prevailed against pleas for litigation of various statutorily-founded claims, including those under the securities, RICO and anti-trust laws.[2] The Court has declared that
 
 
 3
 As a matter of federal law [the Federal Arbitration Act], any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration....
 
 
 4
 Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927 at 941-42, 74 L.Ed.2d 765 (1985). The Court has also held that, "we rigorously enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985). That the claim rests on federal statutory grounds does not necessarily render it less susceptible to arbitration:
 
 
 5
 The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rites at issue. ... If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent "will be deducible from [the statute's] text or legislative history," ... or from an inherent conflict between arbitration and the statute's underlying purposes." ... (citations omitted).
 
 
 6
 Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226-27, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). Permitting enforcement of statutory remedies by means of contractual arbitration has thus become the norm rather than the exception for contracts governed by the Federal Arbitration Act ("FAA").
 
 
 7
 If the issue were open to us to evaluate afresh, we might well interpret Title VII consistent with these recent decisions. But, because of the Alexander decision, the issue is not an open one. In Alexander, the Supreme Court held that a union employee was not foreclosed by his lack of success in an arbitration compelled by his collective bargaining agreement from later pursuing a Title VII suit for his employer's racial discrimination. After analyzing the enforcement scheme of Title VII and finding that "federal courts have been assigned plenary powers to secure compliance with Title VII," 415 U.S. at 45, 94 S.Ct. at 1018, the Court held that,
 
 
 8
 [t]here is no suggestion in the statutory scheme that a prior arbitral decision either forecloses an individual's right to sue or divests federal courts of jurisdiction.
 
 
 9
 415 U.S. at 47, 94 S.Ct. at 1019. The Court rejected a rule of blanket deference owed by federal courts to the prior findings of arbitrators on Title VII issues:
 
 
 10
 The purpose and procedures of Title VII indicate that Congress intended federal courts to exercise final responsibility for enforcement of Title VII; deferral to arbitral decisions would be inconsistent with that goal. Furthermore, we have long recognized that 'the choice of forums inevitably affects the scope of the substantive right to be vindicated.' U.S. Bulk Carriers, Inc. v. Arguelles, 400 U.S. 351, 359-360, 91 S.Ct. 409, 413-14 [27 L.Ed.2d 456 (1971) (Harlan, J., concurring).
 
 
 11
 Alexander, 415 U.S. at 56, 94 S.Ct. at 1023. In a final footnote citing factors relevant to a federal court's decision to admit in evidence a prior arbitral award, the Court added:
 
 
 12
 ... courts should ever be mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum.
 
 
 13
 Alexander, 415 U.S. at 60, n. 21, 94 S.Ct. at 1025, n. 21.
 
 
 14
 Although distinctions between Alexander and the present case will be considered, we regard Alexander's rationale as broad enough to speak to any arbitration of Title VII claims. Two other circuits have already so held. Utley v. Goldman Sachs & Co., 883 F.2d 184 (1st Cir.1989); Swenson v. Management Recruiters International, Inc., 858 F.2d 1304, 1307 (8th Cir.1988), reh'g denied, 872 F.2d 264 (8th Cir.1989). No circuit court has held otherwise.[3]
 
 
 15
 Dean Witter nevertheless urges that Alexander does not control this case for three reasons. First, Alexander specifically held that an employee may pursue both arbitration and Title VII remedies simultaneously, thus implying that Alford may be required to arbitrate first and sue later. Second, Alexander was premised upon the nature of labor arbitration, which is distinguishable in this context from arbitration under the FAA. Third, the rationale of Alexander has been undercut by the Supreme Court decisions affirming the use of commercial arbitration in statutorily-founded claims. None of these arguments is convincing enough.
 
 
 16
 It is true that Alexander emphasized the availability of two overlapping remedies for discrimination in that case--the non-discrimination clause in the plaintiff's union contract and his Title VII claim. To conclude, as the Court did, that the plaintiff could pursue each claim in the appropriate forum does not equate to concluding that a plaintiff must always "exhaust" contractual arbitration remedies before filing a Title VII suit.[4] When a plaintiff asserts only claims founded on employment discrimination proscribed by Title VII, and she challenges no other feature of her employment relationship except as it was affected by the alleged discrimination, she well may find no reason to pursue arbitration. However, the contract does provide for arbitration of any controversy arising out of the employment relationship and Alexander provides that if arbitration is pursued any award may be introduced in the court action "and accorded such weight as the court deems appropriate." Alexander, 415 U.S. at 60, 94 S.Ct. at 1025.
 
 
 17
 Dean Witter's second argument against the applicability of Alexander is that it turned on the collective bargaining context in which the plaintiff's claim arose. The Court denied that Alexander, by being a union member, had waived his Title VII rights or was foreclosed by the doctrine of election of remedies from pursuing his statutory claim. 415 U.S. at 50-52, 94 S.Ct. at 1020-21. The Court was concerned that a labor arbitrator, whose duty is to enforce the parties' contract rather than extrinsic law, would be unsuited to apply Title VII principles. 415 U.S. at 54, 57-59, 94 S.Ct. at 1022,1024-25. The Court also commented that in pursuing an employee grievance, a Union has to satisfy its institutional interest as well as that of the employee. This relationship may deprive the employee of full authority over the fate of his Title VII claim, in derogation of his statutory right. 415 U.S. at 59, n. 19, 94 S.Ct. at 1024, n. 19.
 
 
 18
 While these points are fairly made, they do not carry the day, because they refer to case-specific considerations that reinforced the Court's ultimate conclusion "that the federal policy favoring arbitration does not establish that an arbitrator's resolution of a contractual claim is dispositive of a statutory claim under Title VII." 415 U.S. at 47, n. 6, 94 S.Ct. at 1019, n. 6. The Court's emphasis on arbitration pursuant to collective bargaining agreements may be seen as a response to the only kind of arbitration then prevalent in employment relations. Alexander predates the Court's decisions giving full rein to the FAA, and no FAA question is likely to have been considered in Alexander. This does not mean, however, that Alexander should not apply until the Court holds otherwise. As we have already stated, Alexander appears to rest first on a construction of Title VII. Although there are significant differences between labor arbitration and commercial arbitration--relating to the arbitrator's competence in public law issues and the autonomy with which an employee may pursue an arbitration remedy--there is also a strong federal policy favoring labor arbitration.[5] The Court's decision to subordinate that policy to Title VII gives us pause, to say the least, before inferring that commercial arbitration would not likewise be subordinated.
 
 
 19
 Dean Witter finally asserts that Alexander has been overshadowed by the Court's later decisions favoring commercial arbitration. As the company recognizes, our court was specifically reminded that we have no authority to overrule an apparently controlling Supreme Court decision because it "appears to rest on reasons rejected in some other line of decisions ..." Rodriquez De Quijas v. Shearson/American Express, Inc., --- U.S. ----, 109 S.Ct. at 1921. We are bound by the broad wording of Alexander.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e et seq
 
 
 [2]
 Rodriguez De Quijas v. Shearson/American Express, Inc., --- U.S. ----, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (Securities claims); Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (RICO and Securities Exchange Act Sec. 10(b)); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (antitrust)
 
 
 [3]
 But see Roe v. Kidder Peabody & Co., Inc., No. 88 Civ. 8507, slip op. 1990 WL52200 (S.D.N.Y. Apr. 18, 1990) (Title VII claim may be arbitrated under FAA). Circuit and district courts have divided over the arbitrability of employee claims under the Age Discrimination in Employment Act, which is very similar to Title VII. See Nicholson v. CPC Int'l, Inc., 877 F.2d 221 (3d Cir.1989) (contra arbitration); Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544 (10th Cir.1988); Johnson v. Univ. of Wisconsin-Milwaukee, 783 F.2d 59, 62 (7th Cir.1986); Gilmer v. Interstate/Johnson Lane Corp., 895 F.2d 195 (4th Cir.1990), reh'g en banc denied, (March 28, 1990) (pro arbitration); Pihl v. Thompson McKinnon Securities, Inc., 48 FEP cases 922, 924, 1988 WL54036 (E.D.Pa.1988) (pro arbitration); Pierce v. Shearson Lehman Hutton, Inc., No. 90-C-0722, slip op., 1990 WL60751 (N.D.Ill. Apr. 25, 1990) (pro arbitration)
 
 
 [4]
 Compare Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) (requiring exhaustion of collective bargaining remedies by union employees)
 
 
 [5]
 United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)