Pauline SACKS, Plaintiff,

v.

RICHARDSON GREENSHIELD SECURITIES, INC., Defendant.

No. CV–F–85–269 OWW.

United States District Court, E.D. California.

Dec. 26, 1991.

---

**7.** Voss Objections to the Report and Recommendation, 4).

**8.** Delperdang Decl., 6:9–10.

Mary Louise Frampton, Scott W. Williams, Frampton, Hoppe, Williams & Boehm, Fresno, Cal., for plaintiff.

Michael L. Wolfram, Morgan, Lewis & Bockius, Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION

WANGER, District Judge.

Cross-motions to vacate or confirm arbitration award and to dismiss this action were heard December 12, 1991.

## BACKGROUND

This case was filed in the California State Court for the County of Tulare on February 13, 1985. It was removed to this Court on May 7, 1985, on defendant's invocation of diversity jurisdiction. Plaintiff's amended complaint filed September 20, 1985, asserts claims for her alleged wrongful discharge as a New York Stock Exchange (NYSE) Registered Representative with defendant, a NYSE member firm, in breach of an employment contract; tortious breach of contract for wrongful termination of employment for "whistle blowing" concerning alleged illegal churning practices; violation of California Labor Code § 1054 by alleged misrepresentations about plaintiff to plaintiff's prospective employers and clients; and gender discrimination in violation of the California Fair Employment & Housing Act, Government Code § 12960 (FEHA claim).

By written stipulation filed October 28, 1985, the parties by and through their attorneys agreed as follows:

IT IS HEREBY STIPULATED between Richardson and Sacks, by and through their respective counsel of record, that they will submit *the dispute set forth in the Amended Complaint to arbitration* pursuant to the Constitution and Rules of the New York Stock Exchange and the Court may and should order a stay of all proceedings in this action until a decision and award is rendered in that arbitration. (Emphasis added)

The case was arbitrated for three full days on July 1, October 19 and 20, 1987. Fourteen witnesses were called. Over fifty exhibits were received. A hearing transcript of 630 pages was generated by the proceedings. (Arbitration Record "AR") No claim is made that the arbitrators were unfair nor is the efficacy of the arbitration proceedings challenged as to the composition of the panel of arbitrators or the panel's procedural or substantive fitness to adjudicate.

The arbitrators rendered a decision for defendant on all claims in February of 1988. The decision was provided to counsel for the parties in April of 1988. It referred to a dismissal of the "claim." A letter of April 25, 1988, from plaintiff's counsel to U.S. District Judge Edward Dean Price advised that the arbitration had been concluded, that the stipulated stay might be lifted, and that the plaintiff was ready to discuss discovery and the setting of a trial date.[1] Plaintiff does not contend that the FEHA claim was expressly reserved or excluded from arbitration by any agreement between the parties.

On May 2, 1988, defendant filed a Notice of Arbitration Decision and Request to Dismiss. On August 5, 1988, defendant filed its Motion to Confirm the Arbitration Award. Plaintiff filed opposition authorities to the Motion to Confirm the Arbitration Award September 2, 1988. Defendant filed reply authorities on September 12, 1988. The motion was heard and submitted on September 19, 1988. On November 2, 1988, the Court's order on the motion to confirm arbitration award remanded the matter to the panel of arbitrators "so that they might inform the Court as to their intention in the choice of the use of the words selected by them."

On December 9, 1988, arbitration counsel for the New York Stock Exchange wrote to the defendants' counsel advising that the decision of the arbitration panel was based

---

1. This letter is evidence of the then-existing state of mind and belief of plaintiff's counsel that the statutory FEHA claim was judicially determinable.

"on the merits of the case." Plaintiff, on February 3, 1989, filed her Motion to Vacate the Arbitration Award. On March 27, 1989, defendants filed a counter-motion to Confirm Arbitration Award and dismiss the action and filed opposition to plaintiff's motion to vacate the arbitration award. Plaintiff filed opposition authorities on April 3, 1989. The motions were heard and submitted on April 10, 1989. On May 19, 1989, Judge Price's Memorandum Decision again remanded the matter to the arbitrators and directed them to publish findings of fact and conclusions of law signed by all arbitrators. The Court deferred its decision as to plaintiff's motion until the arbitration panel responded to the Court's order of May 19, 1989.

On October 6, 1989, counsel for defendant prepared written findings of fact and conclusions of law for execution by the panel members. Two of the arbitrators signed those findings and conclusions. It was not until November 7, 1991, that the third arbitrator signed the findings of fact and conclusions of law which were then submitted to the Court.[2] On November 27, 1991, defendants' counsel filed a copy of findings of fact and conclusions of law signed by arbitrators W. Reece Bader and Robin R. Henry.

### The Motions

Two issues were eliminated at the hearing on the cross-motions by concessions of counsel. Defendant acknowledged that in view of this Court's finding that no final administrative decision had been rendered in the matter until November 7, 1991, that its argument that plaintiff had failed to timely challenge the "arbitration award" under the Federal Arbitration Act, ("FAA") 9 U.S.C. § 12 is not a viable contention.

Plaintiff acknowledged that the only claim susceptible to the judicial reservation theory is her statutory claim for gender discrimination.[3] The Stipulation and New York Stock Exchange Submission Agreement were knowingly and voluntarily executed. The agreements expressly authorize the arbitration of the "dispute set forth in the amended complaint." Plaintiff has not suggested that the claims for contract, tortious breach of contract, and the Labor Code claim are not arbitrable. The final decision of the arbitrators, once confirmed, bars relitigation of those claims, absent grounds to refuse confirmation of the decision. Plaintiff asserts she is entitled to a trial de novo on the FEHA claim.

Plaintiff's Motion to Vacate the Arbitration Award is premised on the following grounds:

1. The arbitration panel has not complied with this Court's Orders to formalize their decision. This argument has been rendered moot by the receipt of findings of fact and conclusions of law signed by all three arbitrators.

2. Plaintiff's gender discrimination claim is justiciable even if the arbitration award is confirmed. This contention turns on the interpretation and application of the recent Supreme Court decision in *Gilmer v. Interstate/Johnson Lane Corp.,* — U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Plaintiff argues in essence that statutory gender discrimination is not similar to the Age Discrimination In Employment Act and the *Gilmer* decision does not bar subsequent judicial determination of a previously arbitrated gender discrimination claim. Plaintiff relies primarily on *Swenson v. International Management Recruiters,* 858 F.2d 1304 (8th Cir.1988).

3. The arbitrators manifestly disregarded the law by their alleged failure to give collateral estoppel effect to a State Court finding in an unemployment compensation appeal, that plaintiff "was not discharged for misconduct or insubordination since her conduct constituted neither of these," made by a Tulare County Superior Court Judge

---

**2.** For the purposes of these motions, the arbitration award was final November 7, 1991, when signed by the third arbitrator and submitted to this Court.

**3.** Plaintiff argued at the arbitration that she was discharged because of her religion. That claim is not stated in the amended complaint. Over defendant's objections, the arbitrators permitted evidence on the claim and held the reason for terminating plaintiff was not pretextual and denied the religious discrimination claim.

in an administrative mandamus case brought by defendant alleging denial of a fair hearing on appeal because of the malfunction of a recording device. A variation of this ground is that the arbitrators' decision violates public policy and it is unfair to deny plaintiff a trial *de novo* on the statutory claim.

Defendant raises the following points in support of its Motion to Confirm:

1. The arbitration agreement in this case is not contained in an employment contract. All claims are subject to the FAA. Plaintiff expressly submitted the entire amended complaint to arbitration, unconditionally and without reservation.

2. The finding of the Administrative Law Judge, upheld by the Superior Court Judge's decision bears only on the issue of whether plaintiff willfully breached her duty to her employer and is not the same as a finding of "misconduct," the standard necessary to sustain denial of unemployment compensation benefits to plaintiff in the administrative proceedings.

3. The FAA requires that the arbitration award be confirmed and a judgment for defendant entered.

4. *Gilmer* mandates that this Court confirm the arbitration award, including the state statutory discrimination claim.

### Arbitration Of Statutory Claim

The parties do not dispute that the claims in this case are covered by the FAA, except the statutory discrimination claim. Plaintiff's agreement to arbitrate "the dispute set forth in the Amended Complaint," was entered into in October 1985, when some uncertainty existed as to whether arbitral claims arising under statute were reserved for ultimate judicial resolution. "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer,*

*supra,* 111 S.Ct. at 1652. Plaintiff did not specifically reserve for judicial determination the statutory discrimination claim by including express language in the stipulation to exclude the statutory claim from arbitration.

### Effect Of Gilmer

The parties disagree on the application of *Gilmer v. Interstate/Johnson Lane Corp., supra,* 111 S.Ct. 1647. In *Gilmer,* the United States Supreme Court held that an age discrimination claim under the Age Discrimination in Employment Act of 1967 (ADEA) 29 U.S.C. §§ 621–634, was subject to compulsory arbitration under the FAA and the same securities registration form [4] and rule of the New York Stock Exchange (NYSE Rule 347), which provides for "arbitration of any controversy arising out of a registered representative's employment or termination of employment." The plaintiff argues that *Gilmer* is distinguishable and that this case is controlled by *Alexander v. Gardner–Denver Company,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147, which held an employee's suit under the ADEA was not foreclosed by the prior submission of the claim to arbitration under the terms of a collective-bargaining agreement, because "Congress intended to protect ADEA claimants from a waiver of the judicial forum.[5] *Gilmer, supra,* 111 S.Ct. at 1651. See also *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 634, 105 S.Ct. 3346, 3357–58, 87 L.Ed.2d 444 (1985).

*Gilmer* recognizes "that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer,* 111 S.Ct. at 1652. "[H]aving made the bargain to arbitrate, the parties should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 1652 quoting *Mitsubishi,* 105

---

4. Plaintiff here signed the same Uniform Application for Securities Industry Registration or Transfer, Form U–4. This form was the basis for plaintiff's execution of the written arbitration stipulation and NYSE Submission Agreement.

5. Contrary to *Gilmer,* plaintiff does not here challenge the adequacy of arbitration procedures nor suggest that the arbitrators were not competent, conscientious, and impartial. *Gilmer,* holds that the limited discovery permitted in arbitration does not make the procedure insufficient to allow plaintiff a fair opportunity to prove her claim. 111 S.Ct. at 1654–1655.

S.Ct. at 3354. The burden is on plaintiff to show that Congress intended to preclude a waiver of a judicial forum for a gender discrimination claim. *Gilmer,* 111 S.Ct. at 1652. "Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* 111 S.Ct. at 1652.

*Gilmer* quotes *Mitsubishi, supra,* 105 S.Ct. at 3354 to observe that arbitration procedures, though not as extensively used in the Federal Courts, result in the parties, "trad[ing] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer, supra,* 111 S.Ct. at 1655.[6] *Gilmer* held that the argument that arbitrators will not issue written opinions resulting in a lack of public knowledge of an employer's discriminatory policies, ineffective appellate review, and stifling of the development of the law are misplaced concerns. NYSE rules require all arbitration awards be in writing, that the awards contain the names of the parties, a summary of the issues in controversy, and a description of the award issue. NYSE Rule 627(a)(e). Award decisions are made available to the public. NYSE Rule 627(f). Additionally, arbitration procedures provide adequate relief as equitable remedies may be fashioned by arbitrators. *Gilmer,* 111 S.Ct. at 1655.

No argument is raised about inequality in bargaining power of the parties or any alleged adhesive relationship under the facts of this case. Counsel for plaintiff executed the stipulation to unconditional arbitration of all the claims of the amended complaint after the lawsuit was filed, removed and a controversy over the issue of the arbitrability of the claims had actualized. Even if unequal bargaining power is present, securities industry agreements to arbitrate have been upheld and enforced. *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989).

Defendants, as did the Supreme Court in *Gilmer* and two circuit courts which have faced the issue after *Gilmer,* distinguish *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and its progeny on a number of grounds. In *Alexander,* the arbitration was conducted pursuant to a collective bargaining agreement. The court in *Alexander* found that in submitting grievances to arbitration, the employee sought to vindicate contractual rights under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. *Id.* 415 U.S. at 49–50, 94 S.Ct. at 1020. A labor arbitrator's authority is limited to resolve questions of contractual rights, not statutory rights. *Id.* at 53, 94 S.Ct. at 1022. In *Alexander,* the Court held the assertion of a Title VII, statutory right, was independent of the arbitration process; *Id.* at 54, 94 S.Ct. at 1022; and the statutory Title VII claims were not precluded because of the difference between contractual rights under a collective bargaining agreement and individual statutory rights, the potential disparity and interest between a union and an employee, and the limited authority and power of labor arbitrators.

*Gilmer* distinguished *Alexander* on the following grounds: first, *Alexander* did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. In *Alexander,* the employees had *not agreed* to arbitrate their statutory claims. (Emphasis added) The labor arbitrators were therefore not authorized to resolve such claims, which meant arbitration could not preclude subsequent judicial determination of the statutory actions. *Gilmer,* 111 S.Ct. at 1657. Second, arbitration under collective-bargaining agreements where claimants are represented by unions, present tensions between collective representation and individual statutory rights. Finally, the *Alexander* line of cases were not decided under the FAA, "which reflects a strong and liberal federal policy favoring arbitration agreements." *Gilmer,* at 1657, citing *Mitsubishi,* 105

---

**6.** An important counterweight to the reduced discovery in NYSE arbitration is that arbitrators are not bound by the rules of evidence. *Id.* at 1644 (see NYSE Rule 620).

S.Ct. at 3353. Here, as in *Gilmer*, plaintiff made two express agreements to arbitrate the entire amended complaint.

*Gilmer* specifically held there was an insufficient showing that Congress, in enacting the ADEA, intended to preclude arbitration of age discrimination claims under that Act. 111 S.Ct. at 1652–53. Plaintiff has not provided evidence or authority that Congress intended to make state based gender discrimination claims non-arbitrable. No collective-bargaining agreement applies to this case. Plaintiff has been individually represented by her counsel at all stages. She voluntarily entered into a comprehensive stipulation to arbitrate all her claims asserted in the amended complaint.

A recent California Court of Appeals decision faced the issue of whether congressional intent precludes arbitration of FEHA gender discrimination claims. *Higgins v. Superior Court* (1991) 234 Cal.App.3d 1464, 1 Cal.Rptr.2d 57, 62–63 (notes that the FAA preempts *any conflicting* state law requiring a judicial forum. The decision concluded that procedural distinctions between Title VII and the ADEA are not significant. Moreover, in the event of FAA preemption, the existence of a state law FEHA claim, rather than a Title VII claim, does not change the analysis. *Id.* at 62 citing *Perry v. Thomas*, 482 U.S. 483, 490, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987).[7] *Higgins* did not address the right to jury trial issue in a FEHA case. *Id.* at 62–3. See *Rojo v. Kliger* (1990) 52 Cal.3d 65, 276 Cal.Rptr. 130, 801 P.2d 373. (Waiver of right to jury trial must be knowing, intelligent and voluntary.) The parties have not treated the subject of imputed waiver arising out of an unconditional stipulation to arbitrate.

Plaintiff relies on *Swenson v. Management Recruiters International, Inc.*, 858 F.2d 1304 (8th Cir.1988), cert. den. 493 U.S. 848, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989), in support of her right to *de novo* adjudication of her gender discrimination claim. The Eighth Circuit in *Swenson* held that Congress did not intend to preclude waiver of judicial remedies for violations of a state statute prohibiting sex discrimination and employment. There, as here, the employee sued her employer and supervisor for sex discrimination in violation of Title VII and a state statute. The Court in *Swenson* said, at p. 1309:

> We conclude that Congress has articulated an intent through the text and legislative history of Title VII to preclude waiver of judicial remedies for violation of both federal Title VII rights and parallel state statutory rights, thereby exempting state statutes from the provisions of the Federal Arbitration Act. We emphasize that we reach this holding based upon the legislative history and congressional intent manifested by Congress in passing Title VII.

*Swenson* described, "The main problems with arbitration are the lack of expertise of the arbitrators, the inferior fact-finding process, and the inability of arbitration to judicially construe Title VII by reference to public law concepts." 858 F.2d at 1306; citing *Alexander*, 415 U.S. at 56–57, 94 S.Ct. at 1023–24.

The Eighth Circuit observed that the policy against discrimination is of the "highest priority." *Id.* at 1306. It concluded at 1307:

> ... in the passage of Title VII it was the congressional intent that arbitration is unable to pay sufficient attention to the transcendent public interest in the enforcement of Title VII. Title VII mandates the promotion of the public interest by assisting victims of discrimination. The arbitration process may hinder effects to carry out this mandate.

From this, the *Higgins* court concluded no reasonable person would have cause to suspect that he or she had agreed to arbitrate "any employment dispute," particularly gender discrimination claims. Arbitration could not be compelled in *Higgins* because the parties had not agreed to arbitrate gender discrimination claims.

---

**7.** *Higgins, supra,* 1 Cal.Rptr.2d at 63 is distinguishable. There, the agreement in issue, NASD Code of Arbitration Procedure Section 8, "Industry and Clearing Controversies," was significantly different from the agreement in *Gilmer* and here, because it concerned disputes "arising out of or in connection with business transactions."

The same reasoning was applied to parallel state statutory rights; exempting state statutes from the FAA. *Id.* at 1309.[8]

Plaintiff's counsel could not have been influenced by *Swenson* in October of 1985. No prescience to predict the law established by *Gilmer* and its progeny can fairly be required of plaintiff's counsel. Plaintiff believed her statutory claim was judicially determinable, regardless of the result in the arbitration. Assumedly, this is why plaintiff presented evidence of gender discrimination at the arbitration. AR 6:11–15, 35:18–21, 63:9, 64:5–8, 65:8–9, 279:3–4, 340:25, 341:17, 492:23–26, 514:5–16) This not a case, where in reliance on the belief of the reserved right to judicial determination of the statutory claim, plaintiff elected to forego presenting evidence of gender discrimination at the arbitration. Plaintiff has not argued that the gender discrimination claim was not fully litigated. Only that as a matter of law, its de novo determination in a judicial forum could not be precluded or waived.

In *Bierdeman v. Shearson Lehman Hutton, Inc.,* 744 F.Supp. 211, 213, (N.D.Cal.1990) the Northern District of California in a pre-*Gilmer* gender discrimination case followed *Swenson* and cited *Utley v. Goldman Sachs & Co.,* 883 F.2d 184 (1st Cir.1989) cert. den., 493 U.S. 1045, 110 S.Ct. 842, 107 L.Ed.2d 836 (1989); for the proposition that an employee cannot prospectively waive her rights to sue under Title VII, even where she signs an arbitration agreement. In *Bierdeman,* Judge Peckham found *Utley,* in which a female employee brought a sex discrimination suit asserted by the employer to be subject to arbitration under the same NYSE Rules and U–4 form agreement here at issue, directly in point.

Sacks argues that in entering into the Stipulation and Submission Agreement she could not prospectively waive her right to a judicial determination of her FEHA claim. Defendant counters that the waiver is not prospective. It arose after plaintiff assert-ed her judicial rights and after defendant raised the issue of arbitrability of the entire action, including the FEHA claim, in the federal litigation.

Does *Gilmer* foreclose plaintiff's position? *Gilmer* is an Age Discrimination in Employment Act case. *Gilmer* ended the uncertainty caused by a split in the circuits over the arbitrability of ADEA claims. ADEA claims are now conclusively arbitrable, if subject of an arbitration agreement.

Pre-*Gilmer,* courts in cases such as *Bierdeman* and *Swenson* found employment discrimination claims to be nonarbitrable, whether federal or state-based. This result was based on Supreme Court language that found an intention to preclude waiver of the judicial forum for Title VII claims. *Alexander,* 415 U.S. at 51–52, 94 S.Ct. at 1021–22. However, as *Higgins* observes at 1 Cal.Rptr.2d p. 62, "the message of *Gilmer* and *Alford*[9] is clear: "Disputes alleging a violation of a statutory prohibition against discrimination in employment, may despite important public policies involved, be subject to arbitration if the arbitration agreement in question is governed by the FAA." *Gilmer* does observe that "all statutory claims may not be appropriate for arbitration." *Id.* at 61.

The Supreme Court has not made clear the continuing effect of *Alexander;* except that it has overturned *Alexander* to the extent it stands for the view that arbitration is inferior to the judicial process for resolving statutory claims. *Gilmer, supra,* 111 S.Ct. at 1656 n. 5, citing *Mitsubishi Motors Corp., supra,* 105 S.Ct. at 3354: "[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibit the development of arbitration as an alternative means of dispute resolution."

In *Alexander,* the Court held: "By giving individuals access to the state courts, the private litigant "not only redresses his own injury but also vindicates the impor-

---

8. The Eighth Circuit repeated its holding that an arbitration clause covering an employment discrimination claim violates public policy and is unenforceable by holding a stay of an arbitra-tion immediately appealable. *Swenson v. Mgt. Recruiters, Inc.,* 872 F.2d 264, 267 (8th Cir.1989).

9. *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 230 (5th Cir.1991).

tant Congressional policy against discriminatory employment practice." 94 S.Ct. at 1018. The Supreme Court went on to state: "The resolution of statutory or constitutional issues is a primary responsibility of courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts." *Id.,* 94 S.Ct. at 1024.

Plaintiff argues the ADEA is not a part of Title VII, and although aimed at a form of discrimination, the ADEA does not contain the same recognition of state procedural remedies as does Title VII in dealing with race and gender discrimination claims. *Swenson, supra,* at 1309 n. 12. There are substantive and procedural differences in the provisions of Title VII and the ADEA: 1) Title VII requires that state procedures must be invoked as a prerequisite to filing of a Title VII claim. The ADEA does not have a similar requirement, 2) Title VII contains no limitation that upon its commencement, a federal action shall supersede any state action, as does the ADEA. 29 U.S.C. § 633(a). Because the Congressional scheme recognizes both state agencies and courts as having an integral role in the enforcement of Title VII claims, the *Swenson* court found that compelling arbitration in race and gender discrimination cases as a preemptive forum to the Federal courts violated the Congressional scheme. *Id.,* at 1309 n. 12. *Gilmer* did not cite or analyze *Swenson.*

After the decision in *Gilmer,* two circuit courts have faced the issue of the arbitrability of gender discrimination claims under the FAA.

The Fifth Circuit in *Alford v. Dean Witter Reynolds, Inc., supra,* 905 F.2d 104;[10] a Title VII gender discrimination case, originally upheld the right to trial in a judicial forum after arbitration. This judgment was vacated by the Supreme Court and remanded for further consideration in light of *Gilmer.* The Fifth Circuit found: "We hold that Title VII claims, (gender discrimination) like ADEA claims, are subject to arbitration under the FAA." 9 U.S.C. § 1, 939 F.2d at 230. The Fifth Circuit distinguished *Alexander.* In both *Gilmer* and *Alford,* the arbitration clause was contained in the employee's contract with a security exchange, not an employment contract with the employer. Here, the operative agreements are the Stipulation entered into by the parties, filed with the Court, and the Submission Agreement with the New York Stock Exchange. Neither is an employment contract.

The Fifth Circuit justification for its new position was: "Because both the ADEA and Title VII are similar civil rights statutes, and both are enforced by the EEOC, compare 29 U.S.C. § 626 with 42 U.S.C. § 2000e–5, we have little trouble concluding that Title VII claims can be subjected to compulsory arbitration. Any broad public policy arguments against such a conclusion were necessarily rejected by *Gilmer.*" *Alford, supra,* at 230.

The Sixth Circuit decision, *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir.1991) held that a female securities industry employee's statutory claims of sex discrimination under Title VII and Kentucky law had to be arbitrated. *Willis* does treat the *Swenson* line of authorities in its analysis of the arbitrability of gender discrimination claims. "Although the Supreme Court does not overrule *Alexander* in *Gilmer,* it does reject a reading of *Alexander* as prohibiting the arbitration of employment discrimination claims."

*Willis* distinguishes the *Alexander* line of cases by characterizing those cases as raising the issue of whether arbitration of contract-based claims barred judicial resolution of statutory claims, which were not subjects of the arbitration agreements. *Gilmer,* its progeny, and this case, to the contrary involve the enforceability of arbi-

---

**10.** Plaintiff characterizes *Alford* as a "summary determination," and contrasts the depth of analysis of the arbitrability of Title VII gender discrimination claims by the Eighth Circuit in *Swenson.* This Court does not disagree with that observation. *Alford* does not mention or attempt to distinguish or otherwise treat the *Swenson* line of cases. *Swenson* presents the most comprehensive analysis of the policy behind and effect of procedures applicable to federal and state "employment discrimination" claims *vis a vis* the question of arbitrability.

tration agreements which do cover statutory claims. The role of the EEOC in ADEA and in Title VII cases is sufficiently similar so as to permit arbitration for the reasons stated in *Gilmer*. Arbitration provides sufficient procedural safeguards and mechanisms for discovery to make the process suitable for discrimination claims. Congress did not express a preference for a judicial forum in Title VII cases. *Willis* analyzes *Gilmer* to reject the contention that social policies, or importance of the public rights underlying discrimination claims preclude arbitration.

In rejecting the argument that Title VII claims must be resolved in a judicial forum, the Sixth Circuit stated:

> Thus we find that the Court has rejected the argument that Title VII precludes an arbitral forum from handling such claims if a party agrees to submit all statutory claims to arbitration.

The *Willis* Court goes on to state:

> The plaintiff's arguments which suggest that something inherent in Title VII precludes the enforcement of valid arbitration agreements in circumstances where the FAA is otherwise applicable was rejected in *Gilmer*.

The agreements here at issue: the arbitration provision contained in the U–4 Securities Registration Form, the Stipulation to Arbitrate filed with the Court, and the Submission Agreement with the New York Stock Exchange all subsume the statutory claim. Plaintiff has not seriously argued that any of these contracts are employment contracts. (The legislative history of the FAA confirms that the FAA was never meant to incorporate employment contracts with the requisite effects on interstate commence within its scope. *Mitsubishi, supra,* 473 U.S. at 625–26, 105 S.Ct. at 3353. See also Hearings on S.4213 and S.4214 Before the Subcom. on the Judiciary, 67th Cong. 4th Sess. 9 (1923)). However, the Supreme Court in *Gilmer* specifically found that the Securities Registration Form contained in the arbitration provision at issue in that case (and initially in this case) was not a "contract for employment."

*Gilmer,* 111 S.Ct. at 1651 n. 2. Accordingly, § 1 of the FAA does not exempt Sacks' discrimination claims from her agreements to arbitrate.

*Gilmer* did not expressly decide that sex discrimination claims are to be treated the same as age discrimination claims. However, if the Supreme Court intended that the rule of *Gilmer* not apply to Title VII gender discrimination claims, there was no reason to vacate and remand in *Alford*. The Fifth and Sixth Circuits have held that *Gilmer* compels the conclusion that for the purposes of arbitration, Title VII sex discrimination claims are to be treated the same as age discrimination claims. This conclusion is most easily explained by the High Court's increasing confidence in arbitration as a fair and competent alternative dispute resolution mechanism.

The Ninth Circuit has not addressed, *post-Gilmer,* whether employment related gender discrimination claims are arbitrable under the FAA. Plaintiff has argued that *Gilmer, Alford,* and *Willis* do not satisfactorily address the holding of *Alexander* and *Swenson* that arbitration of gender discrimination claims is against public policy due to Congressional recognition of the importance of the rights asserted and necessity for their judicial determination. However, *Alford* is a gender bias case. If *Alexander* and *Swenson* were to be left intact there was no reason for the Supreme Court to vacate and remand in *Alford*.

*Retrospective Application Of Gilmer*

Plaintiff has suggested that *Gilmer* cannot be retrospectively applied, because under the *Chevron Oil* case,[11] it would be inequitable to do so. *Alford, supra,* 939 F.2d 229 and *Willis* are to the contrary. The recent Supreme Court opinion in *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) holds that when the Supreme Court has applied a rule of law to the litigants in one case, it must do so with respect to all others not barred by procedural requirements of res judicata. *Id.,* —— U.S. at ——, 111 S.Ct. at 2447–48, 115

---

**11.** *Chevron Oil v. Huson,* 404 U.S. 97, 92 S.Ct.    349, 30 L.Ed.2d 296 (1971).

L.Ed.2d at 493. Justice Souter for the majority observed: "Once retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application. The applicability of rules of law are not to be switched on and off according to the individual hardship; allowing relitigation of choice-of-law issues would only compound the challenge to the stabilizing purpose of precedent proposed in the first instance by the very development of 'new' rules." *Id.* — U.S. at ——, 111 S.Ct. at 2448, 115 L.Ed.2d at 493. Applications of the rule of the *Chevron Oil* case [12] cannot determine the choice of law by relying on the equities of the particular case. Citing *Simpson v. Dir., Office of Workers' Comp. Programs, U.S. Dept. of Labor,* 681 F.2d 81, 85–86 (1st Cir.1982) cert. den., sub nom.; *Bath Iron Works Corp. v. Dir., Office of Workers' Comp. Programs, U.S. Dept. of Labor,* 459 U.S. 1127, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983).

The rule of *Beam Distilling* prevents application of the *Chevron Oil* "equitable" analysis in this case to avoid application of the rule in *Gilmer.*

Plaintiff questions the fairness of extending the preclusive effect to an arbitration proceeding, authorized under an agreement signed in 1985, conducted in 1987, decided in 1988, and not finalized until the end of 1991; particularly when the result might have been different if the process had been completed on a timely basis before development of the law to its current state. The four year delay from hearing to final decision is not justly chargeable to either party. The law interpreting and applying the Federal Arbitration Act has been in flux since 1985. With the clarity of hindsight, it can now be recognized that 1)

statutory discrimination claims are not per se excluded from arbitration for public policy reasons; and (2) an express exception from the FAA or reservation in an arbitration agreement is required to preserve such claims for judicial determination. The law on retrospectivity of decisions has also evolved. No authority exists to avoid the application of the law as it now exists.

*Manifest Disregard of Law Claim: Public Policy*

Plaintiff claims that the findings of fact and conclusions of law, which comprise the arbitrators' decision demonstrate that the arbitrators manifestly disregarded the law by not giving collateral estoppel effect to the decision of Judge Kim, Superior Court of California, County of Tulare, in his decision in a writ of mandate proceeding determining plaintiff was eligible for unemployment benefits because she had not been "discharged for misconduct or insubordination." Plaintiff argues this manifest disregard of the law requires that this Court vacate the arbitrators' award.

The manifest disregard doctrine is summarized in *Merrill Lynch, Pierce, Fenner & Smith v. Bobker,* 808 F.2d 930, 933–34 (2d Cir.1986):

[Manifest disregard of the law] clearly means more than error or misunderstanding with respect to the law. [Citations omitted] The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principal but decides to ignore but pay no attention it. [Citation omitted] To adopt a less strict standard of judicial review would be to undermine our well-estab-

---

**12.** *Chevron Oil* prescribes a three-part inquiry to determine whether a decision of the Supreme Court will have prospective effect only:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, ... we must ... weigh the merits and demerits in each case without looking to the prior history of the rule

in question, its purpose and effect, and whether retrospective operation will both further or retard its operation. Finally, we [must] weig[h] the inequity imposed by retroactive application, for [w]here a decision of this court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity." 92 S.Ct. 349 (citations and internal quotations omitted).

lished deference to arbitration as a favored method of settling disputes when agreed to by the parties. [Citations omitted] Judicial inquiry under the "manifest disregard" standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well-defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it.

The Ninth Circuit concurs in *Rostad & Rostad Corp. v. Investment Management & Research, Inc.*, 923 F.2d 694, 697 (9th Cir.1991): "The rules now permit only a restricted review of what arbitrators have decided. Deference to arbitrators is the rule." *Id.* at 697. "Under the [FAA], the federal courts are empowered to set aside arbitration awards on such grounds only when 'the arbitrators were guilty of misconduct in refusing to hear evidence pertinent and material to the controversy.' " 9 U.S.C. § 10(d). See *Commonwealth Coatings v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). *United Paperworkers v. Misco., infra*, 108 S.Ct. at 372. No claim is made that the arbitrators refused to hear evidence.

The well-settled rule that "courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts;" *United Paperworkers v. Misco*, 484 U.S. 29, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987); [13] establishes a deferential standard of review of an arbitration award, even as to questions of law. "We will defer to such legal conclusions and inter-

pretations even though the arbitrator has misinterpreted the law." *George Day Constr. Co. v. Carpenters Local 354*, 722 F.2d 1471, 1477 (9th Cir.1984). When two plausible interpretations by an arbitrator exist, the arbitrator's choice of one ought to be honored even if the reviewing court would have chosen the other. *IAM Local 389 v. San Diego Marine Constr. Corp.*, 620 F.2d 736, 738–39 (9th Cir.1980).

At the arbitration, defendant contended that the original employment contract with plaintiff formed in Washington, D.C., was abrogated by a later novation and a new contract that made plaintiff an employee at will. AR 512:14–17, 534:6–17, 24–535:4, ARB EX. 4. The arbitrators could have found that no cause was required for plaintiff's termination, which is consistent with a finding that no insubordination or misconduct occurred. The arbitrators' finding of an absence of gender discrimination is not inconsistent with findings that plaintiff was not insubordinate or that she did not engage in misconduct.

The unemployment benefit administrative proceedings, subject of the writ of mandate, required proof to a higher standard to establish misconduct.[14] An unemployment benefit proceeding finding does not preclude an employer from showing in a wrongful discharge case that the employee was discharged for different reasons, i.e., poor performance, disobeying directions, errors in judgment or discretion, inability to get along with fellow employees, adverse affect on morale in a small office, or for no reason at all in an employment-at-will case. *Robinson v. Hewlett–Packard Corp.*, (1986) 183 Cal.App.3d 1108, 1123–24, 228 Cal.Rptr. 591. The findings

---

13. When the subject matter of a dispute is arbitrable, "procedural" questions which grow out of the dispute and bear on its final disposition are to be left to the arbitrator. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 559, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964).

14. In unemployment proceedings, the word "misconduct" is limited to " '... conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of

his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, ... ordinary negligence in isolated instances or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute." *Amador v. Unemp. Ins. App. Bd.* (1984) 35 Cal.3d 671, 678, 200 Cal.Rptr. 298, 677 P.2d 224.

of the Superior Court in the mandate proceeding are consistent with the arbitrator's decision that no cause was required for plaintiff's termination. The alternative finding, that Sacks disobeyed a reasonable and lawful order to provide her manager with an original customer complaint letter and to submit on a timely basis a written explanatory statement, which constituted a willful breach of duty, is one of two plausible and consistent explanations for the reasons that led to Sacks' termination *IAM Local 389, supra,* 620 F.2d at 738–39.

Even if, *arguendo,* it is assumed that the arbitrators disregarded the legal principal of collateral estoppel and ignored the findings of the Superior Court in the mandate proceeding, defendant urges the applicability of *United Paper Workers v. Misco, Inc.,* 108 S.Ct. at 373–74:

> A court's refusal to enforce an arbitrator's interpretation of ... [collective bargaining agreements] is limited to situations where the contract as interpreted would violate 'some explicit policy' that is 'well defined and dominant and is to be ascertained' by reference to the laws and legal precedent and not from general considerations of supposed public interest.'

Collateral estoppel applies when: (1) the issue necessarily decided in the prior action is identical to the issue presented in the second action; (2) there was a final judgment on the merits; and (3) the party against whom estoppel was asserted was a party or in privity with a party to the prior adjudication. *Garrett v. San Francisco,* 818 F.2d 1515, 1520 (9th Cir.1987). The issue decided by the Superior Court in the mandate case on the unemployment benefits claim that plaintiff's misconduct or insubordination did not bar unemployment benefits was not identical to the issue decided by the arbitrators concerning plaintiff's employment contract, implied covenant and gender discrimination claims. Findings of failure to comply with directions from a supervisor provide valid grounds for termination.

The reasons collateral estoppel does not apply are:

(1) the burdens of proof on the two cases were different; (2) the stakes were higher in the arbitration than they were in the unemployment case; (3) the issues presented were different. In the unemployment compensation case, defendant had the burden of proving that Sacks was not eligible for benefits because she was discharged for "misconduct." In the wrongful discharge action in the arbitration, plaintiff had the burden to prove that defendant wrongfully terminated her. See, *U.S. Aluminum Corp. v. Alumax, Inc.,* 831 F.2d 878, 881 (9th Cir.1987) *cert. den.,* 488 U.S. 822, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988).

No identifiable public policy has been violated by the arbitrator's decision or failure to give collateral estoppel effect to the Superior Court findings.

Plaintiff's final argument is that the decision to terminate plaintiff for allegedly reporting churning practices at the Visalia office of the defendant, for whistle blowing, and gender discrimination violates explicitly defined public policies that require that this Court retry the case. There was no finding by the arbitrators or by the Superior Court that plaintiff was discharged for objecting to illegal practices; that the defendant engaged in illegal practices; that plaintiff was the victim of gender discrimination; or that any other conduct occurred that violated public policy. The law and facts on each of those issues was fully tried, extensively argued and briefed. The message from the Supreme Court in *Gilmer* is clear. Trial courts are to extend heightened deference to arbitration decisions.

## CONCLUSION

Plaintiff entered into an unconditional and unrestricted arbitration agreement based on her evaluation that her agreement with the New York Stock Exchange required all the claims asserted in the amended complaint to be submitted to arbitration. An extensive contested evidentiary hearing was conducted for three days before the arbitrators. The arbitration matter was thoroughly and competently presented, briefed and argued on each side by experi-

enced counsel. No irregularity in the arbitration proceedings is claimed.

The Federal Arbitration Act governs this action as the contracts for arbitration are not employment contracts. The presence of a statutory gender discrimination claim does not prevent that claim from being arbitrated, based on the Supreme Court's pronouncement in *Gilmer*, and the Fifth and Sixth Circuit applications of *Gilmer* in *Alford* and *Willis*. *Gilmer* is retrospectively applicable to this case for the reasons set forth in *Beam Distilling*. *Chevron Oil* does not apply to prevent such retrospective effect.

The arbitrators did not engage in a manifest disregard of the law, nor does the arbitration decision violate public policy that would preclude confirmation of the arbitration award. To accord the required deference to the arbitrators' decision, this court is not free to substitute its view of the evidence and law for that of the arbitrators.

For all the reasons stated above, plaintiff's motion to vacate the arbitration award is denied. Defendant's petition to confirm the arbitration award is granted. Judgment shall be entered accordingly.