**RAYMOND V. CHARLES, Plaintiff**

**v.**

**VIRGIN ISLANDS SERVICE CO. d/b/a VISCOM, INC.,**
**Defendant**

Civil No. 1996-85(M)

District Court of the Virgin Islands

Div. Of St. Croix

February 16, 1999

Martial A. Webster, Esq., (Law Office of Martial Webster), St. Croix, U.S.V.I., *for Plaintiff*

George S. Eltman, Esq. (Nichols, Newman & Silverlight), St. Croix, U.S.V.I., *for Defendant*

MOORE, *Chief Judge*

## MEMORANDUM

Defendant has moved for summary judgment because plaintiff's claims have already been adjudicated in a formal arbitration proceeding pursuant to a private employment contract. Plaintiff seeks relief for alleged wrongful discharge, breach of contract, and intentional infliction of emotional distress. This case is properly before the Court under federal question jurisdiction resulting from claims filed under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2. For the reasons set forth herein, defendant's motion for summary judgment will be granted.

## BACKGROUND

In June 1994, plaintiff, Raymond V. Charles, ["Charles"] was recalled as a mechanic, along with other former employees who had been laid off, and offered his job back with Virgin Islands Service Company, d/b/a VISCOM, Inc. ["VISCOM"] if he would agree to sign an employment contract which contained a clause requiring arbitration of any claim arising from or relating to the contract. Charles signed the agreement and resumed his employment.

On or about March 15, 1995, VISCOM terminated plaintiff's employment because of a reduction in force within the company. The following day, Charles filed a charge against VISCOM with the Virgin Islands Department of Labor ["VIDOL"], stating "I feel the company has discriminated against me because of my race (black), color (black) and religion (Seventh Day Adventist)." On April 4, 1995, before VIDOL processed the claim, Charles wrote VISCOM, indicating that he wanted to arbitrate his termination per the employment agreement, which the defendant passed on to VIDOL. Plaintiff's claim was arbitrated beginning August 29, 1995, and summarily denied by a decision rendered on October 5, 1995.[1] Mr. Charles, not satisfied with the arbitration result, filed this lawsuit on June 19, 1996. The five-count complaint alleges wrongful

---

[1] Following arbitration, on March 4, 1996, VIDOL issued its determination that the company's actions were questionable and represented probable cause to proceed with the claim. On May 28, 1996, the federal Equal Employment Opportunity Commission ["EEOC"] issued a "right to sue letter."

414

discharge, discriminatory discharge, intentional infliction of emotional distress, breach of contract, and special damages.

## DISCUSSION

A threshold issue presented is whether the arbitration provision of the private, non-union employment agreement between Charles and VISCOM encompassed plaintiff's claim that his discharge was based on racial and religious discrimination.[2] Once that is resolved, the main issues are whether Charles' constitutional and statutory claims of racial and religious discrimination are subject to arbitration and whether he waived the right to raise those claims in court by agreeing to the arbitration clause in the employment agreement. Subsidiary issues are whether the agreement was a contract of adhesion and whether the arbitration clause should be voided because Charles was somehow fraudulently induced or economically coerced into signing it.

### Arbitration Clause Covers Charles' Discrimination Claims

The Supreme Court decision relied upon by VISCOM is illustrative of an arbitration clause which was definite enough to encompass a claim of discriminatory firing. See *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991). When Mr. Gilmer registered as a securities representative with several stock exchanges, including the New York Stock Exchange (NYSE), he signed a registration application by which he "agreed to arbitrate any dispute, claim or controversy" arising between him and his stock broker employer "that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I register." One of the rules of the NYSE provided for arbitration of "any controversy between a registered representative

---

[2] Another threshold question of the application of the Federal Arbitration Act ["FAA"] to this employment contract is easily decided. Certain employees are excepted from the FAA. *See* 9 U.S.C. § 1 ("nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *Id.*). While an oil refinery undoubtably engages in interstate commerce, Charles employment as a mechanic there simply does not bring him within section 1's exclusion. The exception applies only to those "who are actually engaged directly in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." *Tenney v. United Elec. Radio & Mach. Workers*, 207 F.2d 450, 452 (3d Cir. 1953); *accord, Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 227 (3d Cir. 1997).

and any member . . . arising out of the employment or termination of employment of such registered representative." *Id.* at 23. The Court found Gilmer's claim that his employer terminated him for age discrimination in violation of a federal statute to be within terms of this arbitration provision. Id. at 35.

■    The arbitration provision in the Charles/VISCOM non-union employment contract is surely more explicit than the "any controversy . . . arising out of the employment or termination of employment" language of the arbitration provision in *Gilmer.* The arbitration clause Charles signed could not be more clear or unmistakable:

> All claims or matters arising out of or relating in any fashion to this Contract, to the breach of this Contract or to EMPLOYEE'S employment with VISCOM shall be considered arbitrable. Arbitrable matters include, but are not limited to, the following: claims for wrongful or retaliatory discharge under Virgin Islands or Federal Law; claims for employment discrimination under Virgin Islands or Federal Law; defamation or matters sounding in tort; and this issue of arbitrability of any claim or dispute.

(Contract, Mot. Exh. A at 4 (emphasis added).) Accordingly, the arbitration provision in the private, non-union employment agreement between Charles and VISCOM encompassed plaintiff's claim that his discharge was based on racial and religious discrimination.

### Charles Claims of Racial and Religious Discrimination Are Subject to Arbitration

The Supreme Court's *Gilmer* decision also answers the first main issue, namely, whether claims of discrimination are proper subjects for arbitration. Gilmer sued his employer for firing him in violation of the provisions of a federal statute, the Age Discrimination in Employment Act ["ADEA"]. Although the employer's motion to compel arbitration was initially denied by the district court, the Supreme Court reversed and held that statutory claims of discrimination under the ADEA are suitable subjects for the alternative dispute resolution of arbitration. *See Gilmer,* 500 U.S. at 35.

Charles, on the other hand, argues that the facts of his case are controlled by a much earlier decision of the Supreme Court, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59-60, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974), and its progeny.[3] Mr. Alexander was employed under a union collective bargaining agreement ["CBA"], which contained a broad arbitration clause. Following his termination, Alexander lost his Title VII claim of racial discrimination in arbitration and before the EEOC. Notwithstanding this arbitral rejection and administrative loss, Alexander filed his discriminatory firing claim in district court. The Supreme Court ruled that an employee's right to have his discrimination claim under the equal employment provisions of the Civil Rights Act was not barred by submitting that claim to binding arbitration under the union-negotiated collective bargaining agreement.

This Court holds that the 1991 decision in *Gilmer* controls this case and not the 1974 ruling in *Gardner-Denver*. Accordingly, Mr. Charles may not re-litigate in district court the claim he lost in arbitration. As pointed out by the United States Court of Appeals for the Third Circuit, Gardner-Denver and its progeny "were not decided under the FAA, which . . . reflects a 'liberal federal policy favoring arbitration agreements.'" *Pritzker v. Merrill Lynch*, 7 F.3d 1110, 1120 (3d Cir. 1993) (quoting *Gilmer*, 111 S. Ct. at 1657). *Gilmer* reflects the current view of the Supreme Court that arbitration is as suitable as the judicial process for resolving statutory claims, which has supplanted the view to the contrary expressed in Gardner-Denver. *See Sacks v. Richardson Greenshield Sec. Inc.*, 781 F. Supp. 1475, 1481 (E.D. Cal. 1991).[4] Thus, there is no basis for applying Gardner-Denver to Charles' claim in the face of the clear

---

[3] *See, e.g., McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 80 L. Ed. 2d 302, 104 S. Ct. 1799 (1984) (plaintiff allowed to file claim under Civil Rights Act after an unsuccessful arbitration proceeding under a collective-bargaining agreement); *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 67 L. Ed. 2d 641, 101 S. Ct. 1437 (1981) (plaintiff allowed to file claim in federal court under the Fair Labor Standards Act after claim was unsuccessfully submitted to joint grievance committee under a collective-bargaining agreement).

[4] The Supreme Court has recognized the tension between *Gardner-Denver* and *Gilmer*, but has acknowledged as well the distinction between waving the right to a judicial forum as an individual or as part of a union contract, noting that "*Gilmer* involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees . . . ." *Wright v. Universal Maritime Service Corp.*, 142 L. Ed. 2d 361, — U.S. —, 119 S. Ct. 391, 397 (1998).

ruling in *Gilmer* that statutory claims of discrimination are subject to binding arbitration.

■    Further, there is no logical reason Charles' statutory claims of racial and religious discrimination based on constitutional rights should be distinguished from Gilmer's ADEA rights. In a recent decision issued after plaintiff's motion was filed, the Court of Appeals rejected the suggestion that racial discrimination claims under Title VII should receive special treatment under the FAA:

> Although the holding in *Gilmer* involved only ADEA claims and not Title VII claims, numerous courts have determined that the holding is equally applicable to Title VII proceedings. Moreover, as we have noted, the Supreme Court in *Gilmer* expressly disavowed its earlier expressed view that an arbitral forum was inferior to a judicial one for deciding Title VII claims.
>
> Because Title VII and the ADEA "are similar in their aims and substantive provisions," we find Title VII entirely compatible with applying the FAA to agreements to arbitrate Title VII claims.

*Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 182 (3d Cir. 1998) (citations omitted).[5] Obviously, it can make no material difference whether the claimant files first in district court, as in *Gilmer*, or first invokes the arbitration process, as here with Charles.

■    Since all of the claims Charles asserts in this lawsuit either were raised or should have been raised in the arbitration, the entire case will be dismissed with prejudice.

If a party to a binding arbitration agreement is sued in a federal court on a claim that the plaintiff has agreed to

---

[5] Charles' claim that his case should be treated differently from Gilmer's on the ground that racial discrimination faces stricter scrutiny than the age discrimination is also without foundation in the other federal circuits. *See, e.g., Bender v. Smith Barney*, 971 F.2d 698 (11th Cir. 1992) (finding Title VII arbitrable); *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932 (9th Cir. 1992) (finding claims of sexual harassment and gender discrimination arbitrable); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6thCir. 1991) (finding claims of sexual harassment arbitrable); *Alford v. Dean Witter Reynolds*, 939 F.2d 229 (5th Cir. 1991) (finding Title VII claims arbitrable); *Coventry* 856 F.2d 514 (3d Cir. 1988) (finding Title VII and ADEA claims arbitrable).

arbitrate, it is entitled under the FAA to a stay of the court proceeding pending arbitration, Section 3, and to an order compelling arbitration, Section 4. If all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it.

*Id.* 146 F.3d at 179.

## There Was a Knowing Waiver

Charles has suggested that there was not a knowing waiver of his right to bring a statutory claim in a court of law and that he was coerced because he was somehow forced to sign the employment agreement. There is no basis to void the arbitration clause on this ground. Plaintiff has raised no question of whether the procedures in this arbitration were unfair or oppressive, and it has been held that "there is nothing inherently unfair or oppressive about arbitration clauses." *Coleman v. Prudential Bache Sec., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986) (cited by *Peacock*, 110 F.3d at n.33.).

■ The seven-page contract which Charles signed devoted over one-third of the text to explaining the arbitration procedure to be used. The contract clearly stated that arbitration was his "sole remedy for any controversy or claim arising out of or in any way relating to" the contract, its breach or plaintiff's employment. (Contract, Mot. Exh. A at 4.) The contract specifically provided that the claims plaintiff is currently raising are arbitrable, including "wrongful or retaliatory discharge[,] . . . employment discrimination under Virgin Islands law or Federal law; defamation or matters sounding in tort; and the issue of arbitrability of any claim or dispute." (*Id.*) The contract stated that the arbitration would follow the rules of the Employment Dispute Resolution Rules of the American Arbitration Association. (*Id.* at 5.) "Absent a showing of fraud or mental incompetence, a person who signs a contract cannot avoid her obligations under it by showing that she did not read what she signed." *Coleman*, 802 F.2d at 1352.[6]

---

[6] Regarding Charles' suggestion that the VISCOM agreement was a contract of adhesion, "[c]laims alleging unconscionability, coercion, or confusion in signing the agreement generally should be determined by an arbitrator because those issues go to the formation of the entire contract rather than to the issue of misrepresentation in the

419

Even assuming there was some basis to find that the contract was voidable, Charles extinguished his power to avoid it by exercising his rights under the contract to arbitrate the question. *See* RESTATEMENT (SECOND) OF CONTRACTS § 7 (1979) (where a contract is voidable, the complaining party may by ratification of the contract "extinguish the power of avoidance.").[7] Such ratification is binding. *See Lempert v. Singer*, 26 V.I. 326, 766 F. Supp. 1356, 1366 (D.V.I. 1991) (citing RESTATEMENT (SECOND) OF CONTRACTS § 380).

■ By invoking and taking advantage of the arbitration clause, Charles ratified the contract and lost the power to void it. By choosing to accept the terms of the contract and arbitrate his discharge claims, plaintiff has extinguished his power of avoidance.

## CONCLUSION

Because no issue of triable fact remains, the motion for summary judgment will be granted and the case dismissed with prejudice.

ENTERED this 16th day of February, 1999.

### ORDER

For the reasons set forth in the accompanying memorandum, it is hereby

ORDERED that defendant's motion for summary judgment is GRANTED. This matter is DISMISSED with prejudice. The Clerk shall close the file.

ENTERED this 16th day of February, 1999.

---

signing of the arbitration agreement." *Coleman*, 802 F.2d at 1352. The only matters left to a court to decide would be whether there was fraud in the inducement to sign the arbitration clause, rather than the contract generally, or "overwhelming economic power that would provide grounds 'for the revocation of any contact.'" *Peacock*, 110 F.3d at n.33 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 627, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985)). Plaintiff has presented no evidence to raise such a concern here.

[7] Section 7 of the American Law Institute's Restatement (Second) of Contracts is binding in the Virgin Islands since it does not conflict with any local statute. *See* V.I. Code Ann. tit. 1, § 4.